**Kurt GRAF, Appellant,**

v.

## COUNTY OF NORTHAMPTON.

Commonwealth Court of Pennsylvania.

Argued Dec. 6, 1994.
Decided Jan. 12, 1995.

**132** ∎　∎∎∎∎∎∎∎∎∎∎∎∎∎

Robert Pandaleon, for appellant.

Elizabethanne D. McMunigal, for appellee.

Before DOYLE and KELLEY, JJ., and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

Kurt Graf (Graf) appeals an order of the Court of Common Pleas of Northampton County (trial court) that denied his motion for post-trial relief in which he had sought the removal of a compulsory nonsuit and a new trial.

The County of Northampton (County) owns and operates a prison in Easton, Pennsylvania which contains a building to house work-release prisoners. On September 11, 1989, Graf was an inmate at the work-release building when he struck his head on one of its hallway ceilings. Graf filed a complaint in a civil action in which he averred, amongst other things, that the County was negligent in creating a dangerous condition in that the hallway ceiling was too low for safe passage. (Complaint, ¶¶ 6 and 9.)

A jury trial was held on January 20, 1993, at which, in addition to testifying on his own behalf, Graf presented the testimony of William Sweeney (Sweeney), a correctional officer at the prison, and Robert Olander (Olander), the prison warden. At the close of Graf's case and before presenting any evidence of its own, the County made a motion for compulsory nonsuit asserting that Graf had not, based on the evidence presented, established the elements of a cause of action in negligence.[1] The trial court granted the County's motion for compulsory nonsuit.

On February 5, 1993, Graf filed a post-trial relief motion seeking the removal of the compulsory nonsuit and a new trial, in which he asserted that, with the evidence viewed in the light most favorable to him, the decision of the trial court is contrary to law since, on the facts of this case, the County was negli-

---

1. Pennsylvania Rule of Civil Procedure 230.1 governs compulsory nonsuits at trial and provides as follows:

    In a case involving only one defendant, at the close of plaintiff's case on liability and before any evidence on behalf of the defendant has been introduced, the court, on the oral motion of a party, may enter a nonsuit if the plaintiff has failed to establish a right to relief.

    If the motion is not granted, the trial shall proceed. If the motion is granted, the plaintiff may file a written motion for the removal of the nonsuit.

    Pa.R.C.P. No. 230.1. Graf had also presented testimony, including that of his mother, Alice Graf, on the issue of damages; however, Graf did not object to the granting of the nonsuit on this basis.

gent in allowing him to use an unsafe hallway. By decision and order, dated October 28, 1993, the trial court denied Graf's motion for post-trial relief.

On appeal to this Court,[2] Graf asserts that, giving him the benefit of every fact and reasonable inferences therefrom, he presented sufficient evidence to support a claim of negligence and that the trial court therefore erred as a matter of law in granting the compulsory nonsuit. It is well established that an order granting a nonsuit is proper only if the jury, viewing the evidence and all reasonable inferences arising from it, in the light most favorable to the plaintiff, could not reasonably conclude that the elements of the cause of action have been established. *Ford v. Jeffries,* 474 Pa. 588, 379 A.2d 111 (1977); *Costa v. Frye,* 138 Pa.Commonwealth Ct. 388, 588 A.2d 97 (1991). Accordingly, we must therefore review the evidence presented by Graf to determine whether the jury could have reasonably concluded that he had established the elements of a cause of action in negligence.

Graf had been an inmate at the work-release building since April of 1989.[3] (R.R. 53a.) Graf lived on the lower level of two floors in the work-release building. (R.R. 33a, 36a, 55a–56a.) Graf's room opened into a hallway which had at its end a connecting staircase between the lower and upper levels of the building.[4] Approximately ten feet (10') from Graf's room were a couple of steps which lead downward and divided the hallway into two different elevations.[5] (R.R. 36a, 56a, 60a–61a.) The distance between the hallway's floor and ceiling, both before and after the steps, is eighty-four inches (84″) or seven feet (7'). (R.R. 37a, 56a, 76a–77a.) Graf, who is six feet/one inch (6'1″) tall, walked the hallway several times daily for approximately five months and was aware that the ceiling changed its height at the point over the steps. (R.R. 57a–58a, 70a–72a.) Graf stated that, despite being aware of the prison rule against running in the hallways, on September 11, 1989, he was jogging from his room down the hallway in a hurried attempt to get to the cafeteria on the upper level before dinner stopped being served. (R.R. 61a, 72a–73a.) While going down the hallway steps, Graf struck his head on the corner portion of the ceiling at the point where the hallway floor and ceiling change elevations. (R.R. 61a.) As a result of hitting his head on the ceiling, Graf was knocked off of his feet, struck his ankle against the wall and eventually landed on his back. (R.R. 61a–62a.) Immediately thereafter, Graf proceeded to the control center on the upper level of the work-release building in search of medical assistance. (R.R. 61a–62a.) Upon entering the control center and in response to Sweeney's question of what had happened, Graf stated that "I was running down the hallway and I jumped the steps and hit my head." (R.R. 39a–40a.)

We begin by noting that there is no statutory or case law setting forth the specific duty owed to inmates by those charged with the responsibility of their care during

---

2. Our scope of review in an appeal from a trial court's denial of a motion to remove a compulsory nonsuit and to grant a new trial is limited to determining whether the trial court abused its discretion or committed an error of law. *Robinson v. City of Philadelphia,* 149 Pa.Commonwealth Ct. 163, 167, 612 A.2d 630, 632 (1992), *citing Henry v. McCrudden,* 133 Pa.Commonwealth Ct. 231, 575 A.2d 666, *appeal denied,* 526 Pa. 651, 585 A.2d 470 (1990).

3. As part of the work-release program, Graf was permitted to leave the jail facilities during the day in order to continue working at his job at Jamesway. At the conclusion of the work day, Graf was required to return to the work-release building where he would spend the night. (R.R. 46a, 53a, 58a.)

4. The upper level of the work-release building contained the cafeteria and the control center. (R.R. 33a.)

5. Graf had offered an exhibit representing a side-view diagram of the hallway in question. The trial court agreed to admit the exhibit with the caveat that it was not to scale and was for illustrative purposes only. (R.R. 81a–82a.) *See* Diagram Below.

Direction of travel _____

————————>

————

————                     _____

their period of incarceration.[6] "The standard of care a possessor of land owes to one who enters upon the land depends upon whether the person entering is a trespasser, licensee, or invitee." *Carrender v. Fitterer*, 503 Pa. 178, 184, 469 A.2d 120, 123 (1983). Although Graf was not in the work-release building as a matter of choice, his status is most closely to that of an invitee for the following reasons. Graf was injured in the hallway of the work-release building, an area of the prison that was in common use by persons other than just inmates. Graf was clearly neither a trespasser nor a licensee and the parties agree that the duty owed herein is analogous to the standard of care applicable to invitees.

■ The duty owed by a possessor of land to protect an invitee from foreseeable harm is set forth in the Restatement (Second) of Torts §§ 341A, 343 and 343A (1965).[7] With respect to conditions on the land which are known to or discoverable by the possessor, the possessor is subject to liability only if he,

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitee, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

Restatement (Second) of Torts § 343. Additionally, with regard to known or obvious dangers,

[a] possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

Restatement (Second) of Torts § 343A(1). The word "known" denotes not only knowledge of the existence of the condition or activity itself, but also an appreciation of the danger it involves. Restatement (Second) of Torts § 343A comment b. "Thus, the condition or activity must not only be known to exist, but it must also be recognized that it is dangerous, and the probability and gravity of the threatened harm must be appreciated." *Id.* A danger is deemed to be "obvious" when "both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising normal perception, intelligence, and judgment." *Id.* Although the question of whether a danger was known or obvious is usually a question of fact for the jury, the question may be decided by the court where reasonable minds could not differ as to the conclusion. *See Carrender*, 503 Pa. at 185–186, 469 A.2d at 124; Restatement (Second) of Torts § 328B comments c and d.

■ Graf offered no evidence at the trial to support the conclusion that the hallway ceiling was too low for safe passage or in some way constituted a dangerous or defective condition. Graf also offered no evidence that the alleged dangerous condition as such was not subject to ready detection and avoidance by a reasonably prudent person. Graf's own testimony showed that not only was the difference in hallway ceiling height obvious to a reasonable attentive invitee, but also that he was aware that the hallway level changed at the point where the steps were located. Thus, when viewing the evidence and all reasonable inferences arising from it, in the light most favorable to Graf, the trial court properly determined that the jury could not reasonably conclude that he had established the elements of his cause of action. *See Ford*, 474 Pa. 588, 379 A.2d 111 (1977); *Cos-*

6. In a third class county, such as the County herein, the board of inspectors of the jail or county prison are exclusively vested with responsibility for "the safe-keeping, discipline, and employment of prisoners, and the government and management of said institution." *See* 61 P.S. § 408.

7. Restatement (Second) of Torts § 341A governs the liability of possessors of land to invitees with regard to dangerous activities and provides as follows:

[a] possessor of land is subject to liability to his invitees for physical harm caused to them by his failure to carry on his activities with reasonable care for their safety, but only if, he should expect that they will not discover or realize the danger, or will fail to protect themselves against it.

*ta,* 138 Pa.Commonwealth Ct. 388, 588 A.2d 97 (1991).

Accordingly, the trial court did not err in granting the County's motion for compulsory nonsuit and the trial court's order denying Graf's motion for post-trial relief will be affirmed.

### ORDER

AND NOW, this 12th day of January, 1995, the order of the Court of Common Pleas of Northampton County, dated October 28, 1993, denying the post-trial relief motion of Kurt Graf, is affirmed.