William COCHRANE, Appellant

v.

Larry KOPKO, individually and as Warren County Sheriff, The Warren County Sheriff's Department, John Bortz, Jr., individually and as Chairman of the Warren County Board of Commissioners, John Eggleston, individually and as Warren County Commissioner, David Bauer, individually and as Warren County Commissioner, and the County of Warren.

Commonwealth Court of Pennsylvania.

Argued May 5, 2009.

Decided June 3, 2009.

Bruce G. Sandmeyer, Erie, for appellant.

Daniel P. Marnen, Erie, for appellees.

BEFORE: LEAVITT, Judge, and BUTLER, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge LEAVITT.

William Cochrane appeals an order of the Court of Common Pleas of the 37th Judicial District, Warren County Branch (trial court), granting summary judgment in favor of the County of Warren and Commissioners John Bortz, Jr., John Eggleston and David Bauer (collectively, County) in Cochrane's negligence action. The trial court held that the County did not breach the duty of care it owed to Cochrane, who was injured in his cell while he was incarcerated in the Warren County Prison. We affirm.

William Cochrane was an inmate at the Warren County Prison from November 8, 2002, until he was released on February 18, 2003. Cochrane was committed to several different cells during his incarceration and was assigned to Cell 307 beginning on November 28, 2002. Walking into Cell 307, one finds a metal-framed bunk bed bolted to the wall on the right side. At the foot of the bed is a steel sink and a toilet. Cochrane slept in the top bunk. To get to his bed, Cochrane had to climb onto the toilet and hoist himself up. Dismounting the bed required Cochrane to climb over the foot of the bed, place one foot on the sink, slide down and place the other foot on the sink, step from there onto the toilet below, and from there to the floor. Cochrane successfully mounted and dismounted his bed without incident from November 28, 2002, until February 16, 2003, when he was injured.

Cell 307 has a solid cell door with an opening that allows guards and inmates to pass food and other items back and forth. The door opens outward from the cell into the corridor. All of the cell doors in the prison are designed to unlock and open when the guard on duty activates a buzzer. Every morning at 6:00 a.m. the guard presses the buzzer for approximately five seconds. The guard repeats this process two additional times, at fifteen to twenty second intervals. All inmates are required to be out of bed with their cell door open, ready for inspection, after the third buzzer. Failure to do so may result in disciplinary action.

Many of the automatic door-opening mechanisms no longer work properly.[1] Inmates in cells with malfunctioning doors must manually open the door by pushing on it when the buzzer sounds. Thus, these inmates have three opportunities to open their door each morning. From the day he was first incarcerated, Cochrane had never been in a cell with a door that swung open automatically; he was thoroughly familiar with the dynamics of opening the cell door.

On the morning of February 16, 2003, Cochrane had already been awake for approximately one hour when he heard the first buzzer. He remained in bed because his cellmate usually got up to push the door open. On that morning, however, Cochrane's cellmate did not arise during the first buzzer. When Cochrane heard the second buzzer he got up on his knees to try to push the door open from his bed but he was not able to do so before the buzzer ended. When Cochrane heard the third buzzer he panicked, got up on his knees again, reached out from his bed and

---

1. The County notes in its brief that it was Cochrane's "interpretation" of "automatic" that the buzzer not only unlocked the door, but also caused it to "swing away from the door frame." County Brief at 5. For purposes of this opinion, we will accept Cochrane's interpretation of automatic.

pushed on the cell door with both hands. This time the door popped open, leaving Cochrane with no support and causing him to tumble from the bunk. As he fell, Cochrane struck his back on the sink, his left hip on the bed frame and his head on the floor. He lost consciousness but was roused a minute later by a guard who had entered the cell. Cochrane was treated at a hospital and released to his home since his sentence ended on February 18, 2003.

Cochrane initiated the underlying civil action by complaint filed February 9, 2006.[2] Cochrane averred that the County was aware or should have been aware of the malfunctioning cell door in Cell 307 and negligently failed to correct that dangerous condition. Cochrane claimed that as a result of the County's negligence, he sustained severe and permanent injuries to his back, hips and right calf, as well as neurological injuries and loss of vision.[3] The County moved for summary judgment, arguing that any duty of care it owed to Cochrane as an invitee was abrogated when he chose a dangerous course of action in the face of an open, obvious, known and avoidable danger. The trial court granted the County's motion and the present appeal followed.

On appeal, Cochrane argues that the trial court erred in granting summary judgment in favor of the County. He contends that the County owed him a special duty of care because, as an inmate, he had no control over his surroundings. Cochrane asserts that the County was aware that the door to Cell 307 was defective and that it would have to be opened manually in order to comply with the prison's wake-up protocol. Therefore, Cochrane maintains that it was foreseeable that an inmate might attempt to open a malfunctioning cell door by pushing on it from the top bunk and then injure himself as he fell to the floor.

An appellate court may reverse the granting of a motion for summary judgment only if there has been an error of law or an abuse of discretion. *Phillips v. Selig*, 959 A.2d 420, 428 (Pa.Super.2008). Our scope of review is plenary, and in reviewing the trial court's order we apply the same standard for summary judgment as the trial court. *Id.* Pursuant to Pa. R.C.P. No. 1035.2(2),[4] a trial court shall enter judgment if, after the completion of discovery, an adverse party who will bear the burden of proof at trial fails to produce "evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury." In considering the merits of a motion for summary judgment, a court views the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Phillips*, 959 A.2d at 427.

---

**2.** Warren County Sheriff Larry Kopko and the Warren County Sheriff's Department were originally named as defendants. Those parties were dismissed on preliminary objections.

**3.** In Count II of the complaint, Cochrane's wife, Norma Cochrane, sought damages for loss of consortium.

**4.** The rule states:
   After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law

   * * *

   (2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.
   Pa R.C.P. No. 1035.2(2).

■ We begin with the standard of care owed by the County to the inmates in its prison. It is well settled that the standard of care owed to an individual by a possessor of land depends upon whether the individual is a trespasser, licensee or invitee. *Carrender v. Fitterer*, 503 Pa. 178, 184, 469 A.2d 120, 123 (1983). This Court has held that inmates are analogous to invitees for purposes of determining the duty of care owed by prison officials. *Graf v. County of Northampton*, 654 A.2d 131, 134 (Pa.Cmwlth.1995).[5]

■ Possessors of land owe a duty to invitees to protect them from foreseeable harm. *Carrender*, 503 Pa. at 185, 469 A.2d at 123 (citing Restatement (Second) of Torts §§ 341A, 343 and 343A (1965)). Regarding conditions on the land which are either known to or discoverable by the possessor, the possessor is subject to liability only if he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

Restatement (Second) of Torts § 343.

Section 343A of the Restatement expands upon the significance of dangers that are known or obvious to an invitee:

A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

Restatement (Second) of Torts § 343A.[6] In adopting Section 343A, our Supreme Court explained the relationship between the

---

5. Cochrane argues that *Graf* is distinguishable because that case addressed the standard of care applicable to common areas in a prison, whereas Cochrane was confined to his cell at the time of his injury. Cochrane suggests that in his situation, the County owed him a "special" (and presumably heightened) duty of care. Cochrane does not explain what that special duty should entail, nor does he cite to any authority for such a standard. We decline to create one, and note that as an invitee Cochrane was owed the highest duty of care available at common law. Moreover, even "special relationships" imbued with a heightened duty of care under the Restatement encompass concepts of reasonable care under the circumstances and curtailing *unreasonable* risks of harm to others when the possessor of land has reason to know of the risk. *See* Restatement (Second) of Torts §§ 316–319 (addressing duty of parent to minor child; master to servant; possessor of land or chattels to licensee; and person in charge of another person with dangerous propensities). As aptly noted by the trial court, "it is never incumbent upon the one owing the duty to protect others against all possible dangers." Trial Court Opinion at 5.

6. Our Supreme Court defined the terms "known" and "obvious" as follows:

A danger is deemed to be "obvious" when "both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising normal perception, intelligence, and judgment." Restatement, supra, § 343A comment b. For a danger to be "known," it must "not only be known to exist, but ... also be recognized that it is dangerous and the probability and gravity of the threatened harm must be appreciated." *Id.* Although the question of whether a danger was known or obvious is usually a question of fact for the jury, the question may be decided by the court where reasonable minds could not differ as to the conclusion. See Restatement, supra, § 328B comments c and d.

*Carrender*, 503 Pa. at 185–186, 469 A.2d at 123–124.

doctrine of assumption of risk and the possessor's duty of care, or lack thereof:

> It is precisely because the invitee assumes the risk of injury from obvious and avoidable dangers that the possessor owes the invitee no duty to take measures to alleviate those dangers. Thus, to say that the invitee assumed the risk of injury from a known and avoidable danger is simply another way of expressing the lack of any duty on the part of the possessor to protect the invitee against such dangers.

*Carrender*, 503 Pa. at 188, 469 A.2d at 125.

■ Applying the foregoing principles, we agree with the trial court that the County was entitled to judgment as a matter of law. The County owed a duty to Cochrane only to protect him from foreseeable harm. We disagree with Cochrane that the harm which befell him was foreseeable to the County. At most the County was aware that the door to Cell 307 did not open automatically when the buzzer sounded. Assuming, *arguendo*, that the malfunctioning door is a defective condition of the property, it was not reasonably foreseeable that an inmate would wait until the last of three buzzers had sounded and hurriedly attempt to push the door open from the upper bunk, thereby thrusting himself over the edge of the bed. Stated another way, just because an event occurred does not mean that it was reasonably foreseeable.

■ Assuming, again for the sake of argument, that the risk of harm was foreseeable, Cochrane assumed the risk of injury from a danger that was known and obvious to him, thus abrogating any duty of care owed by the County. Cochrane was familiar with the prison's buzzer system and the routine that he and his cellmate had established for opening the door every morning. He was aware that the door to Cell 307 had to be opened manually, and that the door opened outward into the corridor. Finally, Cochrane was aware of the height of the upper bunk and the danger of falling from that height, as evidenced by his testimony that he was concerned about falling whenever he had to climb down.[7] Even though Cochrane had been awake for one hour prior to the first buzzer, he remained in bed instead of dismounting to the floor to open the door during either the first or second buzzer. Cochrane chose to attempt to open the door in an unreasonable manner by pushing on it with both hands, knowing that it would open outward and leave him at the mercy of gravity. The danger associated with opening the cell door in this manner was obvious to a reasonable person in Cochrane's situation.

Based upon the foregoing analysis, we hold that the County, as a matter of law, could not be subject to liability for Cochrane's injuries. Accordingly, we affirm the trial court's order entering summary judgment in favor of the County.

## ORDER

AND NOW, this 3rd day of June, 2009, the order of the Court of Common Pleas of

---

7. Cochrane testified as follows:

Q. When you got out of bed during the daytime, did you just jump down?

A. Nope. You come off. You put one foot on the sink, hope your sock don't slip. And you slide down, and put another foot on the sink. Then you come down and put both feet on the toilet and down on the floor.

* * *

Q. And the way you get out is you climb over the back end of the bed, onto the sink, onto the toilet, hope you don't slip.

A. Yeah, I almost fell two or three times getting out of bed.

Reproduced Record at 35–36.

the 37th Judicial District, Warren County Branch, in the above-captioned matter, dated April 11, 2008, is AFFIRMED.