**CLD-202**

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1907
_____

DAVID W. FIORE,

Appellant

v.

RONNIE R. HOLT, FBOP/DOJ; JULIE A. NICKLIN, FBOP/DOJ;
STEPHEN G. WAGNER, FBOP/DOJ; BOLCAVAGE MARK, FBOP/DOJ;
STEVEN HANIS, FBOP/DOJ; UNITED STATES OF AMERICA
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 3-09-cv-02259)
District Judge: Honorable Richard P. Conaboy
_____

Submitted for Possible Summary Action Pursuant to
Third Circuit LAR 27.4 and I.O.P. 10.6
June 3, 2011
Before: RENDELL, FUENTES and SMITH, <u>Circuit</u> <u>Judges</u>

(Opinion filed: July 6, 2011 )
_____

OPINION
_____

PER CURIAM

   David Fiore, proceeding pro se, appeals from the District Court's order granting

the defendant-appellees' motion for summary judgment. Because the appeal does not

present a substantial question, we will summarily affirm. <u>See</u> 3d Cir. L.A.R. 27.4; 3d Cir. I.O.P. 10.6.

I

Because we write primarily for the parties, we will recount only those background facts that are necessary to our decision. In January 2007, Fiore, who was then a federal prisoner, was transferred from the Federal Medical Center in Devens, Massachusetts, to the United States Penitentiary ("USP Canaan") in Waymart, Pennsylvania. Upon arriving at USP Canaan, Fiore informed staff members that the inmate handbook they provided him was incomplete, and he declared that he could not be held responsible for any disciplinary violation.

Sometime between March and May 2007, Fiore met with Warden Holt to discuss what Fiore perceived to be a pattern of misconduct and retaliation taken against him dating back to 2005. Fiore alleged that Holt looked into the matter but concluded that there was no way to help Fiore because the problem "goes to high (Washington) you're on your own." D. Ct. Doc. No. 1, 5. Fiore then explained to Holt that he would pursue administrative remedies against him. According to Fiore, between June and September 2007, he filed grievances against Holt and the other defendants, employees at USP Canaan. Fiore alleged that, as a result, those employees engaged in a conspiracy "to falsify, obfuscate, misdirect, prevaricate, conceal a conflict of interest, and conceal material fact(s) in connection with" his grievances. <u>Id.</u>

In September 2007, Fiore submitted an informal complaint form regarding Executive Assistant Wagner's failure to provide Fiore with written responses to his

2

administrative requests. The next day, Fiore's prison employment assignment was changed.

In November 2007, Fiore refused to be transferred to a halfway house in Boston because he had previously submitted several requests to prison officials to determine whether he would be eligible for disability benefits while in the halfway house work program, but had not received an answer. As a result of his refusal, Fiore was disciplined for failing to obey a direct order and for refusing to participate in a program. He was placed in segregated housing and, after a disciplinary hearing, was sanctioned with 30 days' loss of commissary privileges. Fiore noted that the disciplinary hearing was held on the fourth business day following the incident, beyond the three-day period prescribed by the Bureau of Prisons' ("BOP") regulations. Hanis and Bolcavage included an explanatory note in the decision indicating that the delay resulted from being short-staffed during the holiday season, which Fiore alleged was a misrepresentation. Fiore appealed and the charge for refusing the program placement was expunged. At a re-hearing, his sanction was amended to 15 days' loss of commissary privileges.

After learning that he could receive disability benefits while in a halfway house, Fiore reapplied for placement. While his request was pending, he wrote a letter of complaint to Senator Reed of Rhode Island, who then sent an inquiry to BOP staff concerning Fiore's application. In a response dated January 25, 2008, Holt explained why Fiore was sanctioned in November 2007 and that Fiore's second request for halfway house placement was under administrative review. Fiore noted that Holt had received a letter from USP Canaan staff dated January 11, 2008, which recommended that Fiore's

3

request be denied. At some point, Warden Holt signed the letter, indicating his concurrence with the recommendation.

In December 2007, while on his way to his prison work assignment, Fiore slipped on a patch of ice, injuring his back, shoulders, and hands. He alleged that prison officials were aware of the ice, but failed to do anything that would have prevented his injuries. Fiore also alleged that prison medical staff provided him improper treatment after his fall by failing to transport him on a back board or stretcher. In February 2008, Fiore filed an administrative claim under the Federal Tort Claims Act ("FTCA").

In November 2009, Fiore filed in the District Court a complaint under Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), and the FTCA. He alleged that: the defendants' conduct amounted to an unlawful conspiracy; the defendants deprived him of due process; prison staff negligently maintained the grounds on which Fiore fell; and prison medical staff provided him negligent medical care. The District Court granted the defendants' motion for summary judgment. Fiore now appeals that decision.

II

We have jurisdiction pursuant to 28 U.S.C. § 1291. "Our review of a district court's grant of summary judgment is plenary, and we must apply the same standard the district court was required to apply under Federal Rule of Civil Procedure 56(c)." Spence v. ESAB Group, Inc., 623 F.3d 212, 216 (3d Cir. 2010). "Thus, we can affirm only 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to

4

judgment as a matter of law.'" Id. (quoting former Fed. R. Civ. P. 56(c)(2)). "A genuine issue of material fact exists if there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Id. "In evaluating the evidence, we must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." Id. (internal quotation marks and citation omitted).

Pennsylvania law governs Fiore's claims, brought under the FTCA, that he fell because of the prison's negligence and that he was given negligent medical care. See 28 U.S.C. §§ 1346(b)(1), 2674; DeJesus v. United States Dep't of Veterans Affairs, 479 F.3d 271, 279 (3d Cir. 2007). In Pennsylvania, a plaintiff in a negligence action must demonstrate: (1) that the defendants owed him a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual injury. See Nw. Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 139 (3d Cir. 2005). The BOP must exercise ordinary diligence in keeping prisoners safe and free from harm. See 18 U.S.C. § 4042; Jones v. United States, 534 F.2d 53, 54 (5th Cir. 1976).

Because Pennsylvania law recognizes inmates as invitees, see Graf v. Cnty. of Northampton, 654 A.2d 131, 134 (Pa. Commw. Ct. 1995), Fiore had to show that staff at USP Canaan: (1) knew of the icy walkway condition or would have discovered it by the exercise of reasonable care, and should have realized that it posed an unreasonable risk of harm; (2) should have expected that Fiore would not discover the danger or would have failed to protect himself against it; and (3) failed to exercise reasonable care to protect Fiore from the danger. See Carrender v. Fitterer, 469 A.2d 120, 123 (Pa. 1983). Further,

5

Fiore had to demonstrate that USP Canaan staff either had a hand in creating the harmful condition or had actual or constructive notice of the condition. See Estate of Swift v. Ne. Hosp. of Phila., 690 A.2d 719, 722 (Pa. Super. Ct. 1997). The District Court concluded that summary judgment was appropriate with respect to this claim because Fiore offered no more than his bare assertions that the ice on the walkway was in view of a security camera and that staff were aware of the situation. Viewing the complaint and all the evidence in Fiore's favor, we agree that there was insufficient evidence in the record upon which a jury could conclude that USP Canaan staff knew (or should have known) about the condition or failed to do anything about it.

We also agree that the defendants were entitled to summary judgment as to Fiore's claim for negligent medical treatment. As the District Court reasoned, the evidence in the record indicates that prison medical staff concluded that Fiore's injuries did not necessitate transporting him on a stretcher or back board; had such a device been needed, they would have used one. Fiore has presented no material evidence disputing that assessment.

We turn next to Fiore's claims arising under Bivens. Fiore first argued that USP Canaan staff retaliated against him for filing grievances and lawsuits by issuing him an institutional misconduct, denying his administrative grievances, and changing his prison employment. Prison officials may be held liable for retaliatory conduct that was motivated "in substantial part by a desire to punish [the prisoner] for exercise of a constitutional right," Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000) (quoting Thaddeus-X v. Blatter, 175 F.3d 378, 386 (6th Cir. 1999) (en banc)), such as filing

6

lawsuits and grievances related to the conditions of incarceration. See Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981). To prevail on a retaliation claim, the prisoner must prove: (1) that the conduct leading to the alleged retaliation was constitutionally protected; (2) that he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) that his protected conduct was a substantial or motivating factor in the decision to discipline him. See Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). However, "prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Id. at 334.

With regard to Fiore's institutional misconduct claim, the defendants presented evidence that Fiore was cited specifically in response to his refusal to obey orders and accept placement in the halfway house. Although Fiore ultimately succeeded in having one of the misconduct charges expunged, there is no evidence in the record that either charge was filed because staff were retaliating against him. Likewise, we agree with the District Court that there is no evidence in the record that establishes a causal link between the denial of any of Fiore's administrative grievances and his filing of lawsuits and grievances. Thus, the District Court properly granted summary judgment with respect to those two claims.

Summary judgment was also appropriate with regard to Fiore's claim that his prison employment was changed in retaliation for complaining about Wagner's failure to provide written responses to his administrative requests. The District Court reasoned

7

that, inter alia, Fiore failed to demonstrate that the change in his employment constituted an adverse action because he was not deterred from pursuing his lawsuits and administrative grievances. Although we agree that Fiore failed to satisfy <u>Rauser</u>'s second prong, whether or not Fiore was actually deterred is irrelevant. The standard is an objective inquiry, and "is intended to weed out only inconsequential actions, and is not a means whereby solely egregious retaliatory acts are allowed to proceed past summary judgment." <u>Thaddeus-X</u>, 175 F.3d at 398. An appropriate basis for entering summary judgment, then, is that Fiore presented no evidence that the transfer was an adverse action. Before the District Court, he provided no basis to conclude that the position to which he was transferred was less preferable than his prior job. Our assessment is bolstered by his statement on appeal, which indicates only that he "was placed into a job where he had to sit all day long from 7:30 AM released for lunch returned at 12:00 PM and had to stay there until recall for the 4:00 institutional count." Appellant's Response, 7. We do not think, based on the record before us, that a transfer into such a position was sufficiently adverse to deter a person of ordinary firmness from exercising his constitutional rights.

Fiore's second set of claims alleged Due Process violations in the denials of his grievances, Wagner's verbal, rather than written, responses to some of his grievances, the change in Fiore's prison employment, and the disciplinary hearing related to Fiore's refusal to participate in the halfway house program. Because "the existence of a prison grievance procedure confers no liberty interest on a prisoner," <u>Massey v. Helman</u>, 259 F.3d 641, 647 (7th Cir. 2001), we agree with the District Court that summary judgment

was appropriate with regard to Fiore's claims concerning the disposition of his grievances.[1]  Likewise, the defendants were entitled to summary judgment as to Fiore's prison employment claim, as prisoners enjoy no protected interest in prison employment. See James v. Quinlan, 866 F.2d 627, 629-30 (3d Cir. 1989).

Fiore also alleged that his right to due process was violated because his disciplinary hearing was not timely held and because Hanis and Bolcavage misrepresented the reason for the delay.  The District Court reasoned that Fiore's claim did not implicate either substantive or procedural due process rights.  To give rise to a liberty interest under the Due Process Clause, a sanction must either fall within the contours of a sentence "in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, . . . [or] impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin v. Conner, 515 U.S. 472, 484 (1995).  We need not address the District Court's procedural due process analysis because we agree that Fiore's 30-day loss of commissary privileges (later reduced to 15 days) was not the type of atypical and significant hardship contemplated in Sandin.

Finally, Fiore alleged a conspiracy among the defendants to deprive him of his constitutional rights.  To survive the defendants' motion for summary judgment, Fiore was required to provide evidence that would allow a reasonable factfinder to conclude that USP Canaan staff conspired to harass and retaliate against him for pursuing

---

[1]  Inasmuch as Fiore sought relief for Holt's purported misrepresentation to Senator Reed, we perceive no potential basis for liability.

9

administrative remedies and filing grievances against them.  See Estate of Oliva ex rel. McHugh v. New Jersey, 604 F.3d 788, 802 (3d Cir. 2010).  Because, as discussed above, Fiore failed to make out any viable claim that his constitutional rights were infringed, the record cannot support the determination that any conspiracy to infringe Fiore's rights existed.  Nor has Fiore introduced any evidence beyond his bare assertions that USP Canaan staff engaged in any such conspiracy.  Thus, summary judgment as to that claim was appropriate.

We have considered Fiore's other arguments raised on appeal and conclude that they lack merit and warrant no additional discussion.  Accordingly, we will affirm the District Court's order.