Deborah COUTO–PRESSMAN,
Appellant

v.

Kenneth L. RICHARDS and Virginia M. Richards, husband and wife, and The City of Allentown.

Commonwealth Court of Pennsylvania.

Argued Dec. 10, 2012.
Decided March 21, 2013.

Matthew T. Croslis, Allentown, for appellant.

Frank G. Procyk, Allentown, for appellees Kenneth L. and Virginia M. Richards.

Susan E. Wild, Allentown, for appellee The City of Allentown.

BEFORE: LEAVITT, Judge, and McCULLOUGH, Judge, and COLINS, Senior Judge.

OPINION BY Judge LEAVITT.

Deborah Couto–Pressman (Couto–Pressman) appeals two orders of the Court of Common Pleas of Lehigh County (trial court) that dismissed her tort complaint with prejudice. In granting summary judgment to defendants Kenneth and Virginia Richards (collectively the Richards) and to The City of Allentown (City), the trial court concluded that Couto–Pressman's evidence was inadequate to show that her fall on the Richards' property was caused by a dangerous condition of the property or that the City knew, or should have known, that a hazard existed. Discerning no error, we affirm the trial court.

Couto–Pressman alleged that she was injured when she attended a yard sale at the Richards' home. She was advised by Kenneth Richards that there were additional items for sale in the backyard. Because the gate to the backyard was blocked by sale items, Couto–Pressman walked around the side of the house to get to the backyard. While walking through the Richards' side yard, Couto–Pressman slipped and fell.

Concrete curbing, constructed by the City, edges the street that runs in front of the Richards' property but not along the street that runs along the side of the Richards' house. There, railroad ties have been placed end to end to serve as a curbing to the street. Between these railroad ties are gaps several inches wide.[1] There is no sidewalk between this curbing and the Richards' side yard.

When Couto–Pressman slipped in the Richards' side yard, her foot got stuck between two railroad ties; she suffered a fracture in her right lower leg and ankle joint. Couto–Pressman had surgery to repair the breaks and faces additional surgery. She was in a cast for six weeks and underwent physical therapy for 14 weeks; the stress of this accident brought on an episode of shingles. Couto–Pressman, a nurse, continues to suffer pain, which has limited her ability to work. She filed a tort claim against the Richards and the City seeking damages for her injuries.

In her complaint, Couto–Pressman asserted that the defendants were negligent in several ways. The Richards failed to install a proper sidewalk and curbing on the side of their property. In addition, they failed to warn Couto–Pressman about the danger presented by the spaces between the railroad ties. The City was negligent in failing to provide safe walkways and curbing; permitting the Richards to maintain a dangerous condition on their property; failing to inspect the Richards' property; and failing to enforce certain statutes and ordinances. At the close of discovery, the defendants each moved for summary judgment.

The Richards based their motion on Couto–Pressman's testimony that she slipped and fell and only *then* did her ankle hit the railroad tie. The railroad tie did not cause her to fall, and Couto–Pressman could not even testify with certainty that her foot became stuck between the railroad ties. Accordingly, the Richards argued that Couto–Pressman did not produce evidence to show that the gap between the railroad ties constituted a dangerous condition. Their duty to an invitee extended only to harm caused by a condition on the land they knew to present an unreasonable risk. Because there was no showing that they knew or should have known that the railroad ties that bordered their side yard were likely to cause harm, they did not violate their duty of care to Couto–Pressman.

In support of its motion, the City argued that Couto–Pressman had the burden of proving that a dangerous condition existed in its right-of-way and that it had notice of such dangerous condition. Couto–Pressman's evidence failed to prove either a dangerous condition existed or the City's notice thereof.

In response, Couto–Pressman argued that there was a factual dispute about the condition of the property that precluded summary judgment. She noted that she could not enter the Richards' backyard from the street at the rear of the property because of a wooden ornament placed by the Richards in front of a curb cut. She also pointed to the expert report of Patrick M. Sewards, M.D., who opined that her fractures were a result of her foot becoming trapped or lodged in some fixed structure. Couto–Pressman argued that her injury was caused by the fact that her foot got stuck between the railroad ties. As to the City, Couto–Pressman showed that its employees had been at the property in

---

1. The Richards did not deny that the railroad ties were on their property but denied responsibility for installing them.

2003 and 2004 installing and repairing concrete curbing. They should have noticed the railroad ties in its right-of-way, which were not a proper curbing material, and reported it to their superiors.

The trial court granted summary judgment. It found that there was no evidence to prove that a dangerous condition existed on the Richards' property. In her deposition, Couto–Pressman testified that she was walking on damp grass when she slipped and only then did she make contact with the wooden railroad ties. She did not recall if her foot got lodged between the ties. Couto–Pressman's sole expert on the property's condition was a surveyor, and he merely confirmed that the railroad ties were located in the City's right-of-way. The surveyor did not opine that the railroad ties and their placement were inherently dangerous. In addition, the City was immune from suit by reason of the act known as the Political Subdivision Tort Claims Act, 42 Pa.C.S. §§ 8541–8542.

**2.** Section 8542(b)(6) states, in relevant part, as follows:

> (6) Streets.—
>> (i) a dangerous condition of streets owned by the local agency, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition.

Section 8542(b)(7) states, in relevant part, as follows:

> (7) Sidewalks.—A dangerous condition of sidewalks within the rights-of-way of streets owned by the local agency, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under

The legislature has provided exceptions to governmental immunity under the Political Subdivision Tort Claims Act. Two exceptions relevant to Couto–Pressman's action are those permitting a plaintiff to recover damages for dangerous conditions in a street or sidewalk. 42 Pa.C.S. § 8542(b)(6)(i), (7).[2] To meet either exception, the plaintiff must establish that a dangerous condition existed and the local agency had knowledge of it. The trial court held that Couto–Pressman did not meet either exception. First, she did not prove that railroad tie curbing, with spaces between the ties, constituted a dangerous condition. Second, the City had no notice of the allegedly dangerous condition.

On appeal to this Court, Couto–Pressman raises five issues.[3] First, she claims that the trial court ignored "genuine issues of material fact related to the location and existence and notice of a dangerous condition and the manner or mechanism of injury." Couto–Pressman's Brief at 4. Second, she argues the trial court erred in holding

> the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition. When a local agency is liable for damages under this paragraph by reason of its power and authority to require installation and repair of sidewalks under the care, custody and control of other persons, the local agency shall be secondarily liable only and such other persons shall be primarily liable.

42 Pa.C.S. § 8542(b)(6)(i) and (7).

**3.** Our scope of review is plenary, and in reviewing the trial court's order we apply the same standards for summary judgment as does the trial court. *Stimmler v. Chestnut Hill Hospital*, 602 Pa. 539, 553, 981 A.2d 145, 153 (2009) (citations omitted); *Cochrane v. Kopko*, 975 A.2d 1203, 1205 (Pa.Cmwlth. 2009). The trial court's order will be reversed only if it has committed an error of law or abuse of discretion. *Id.*

that she was contributorily negligent, which is an issue for a jury, not the court. Third, she contends the trial court failed to consider her evidence that the Richards were in violation of local ordinances and, thus, showed a breach of duty of care. Fourth, she claims that the trial court failed to address other theories of negligence. Finally, she states that the trial court neglected to consider the failure of the Richards to make their property safe for the yard sale.

■ We begin with a review of the duty of care owed by the defendants to Couto–Pressman. An owner of land has a duty of care to business invitees that has been summarized as follows:

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land, if but only if, he:

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

*Neve v. Insalaco's*, 771 A.2d 786, 790 (Pa.Super.2001) (quoting Restatement (Second) of Torts § 343 (1965)). The parties agree that Couto–Pressman was a business invitee because she was invited to the yard sale at the Richards' home. Accordingly, the Richards had a duty to warn Couto–Pressman about a dangerous condition that her reasonable exercise of care would not discover. To hold the City liable, Couto–Pressman would have to prove that the City

had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition.

42 Pa.C.S. § 8542(b)(6)(i).

Couto–Pressman argues that the Richards failed to warn her about the danger presented by the gap in the railroad ties and that there was a genuine dispute on the relevant facts. She points out that Kenneth Richards told her that there were more items in the backyard and invited her to "just go around the back." Reproduced Record at 286 (R.R.——). She did so by walking on the grass in the side yard where she slipped and fell. Her body continued to slide, but her foot got stuck between the railroad ties. In her deposition, Couto–Pressman stated that the accident happened quickly, causing pain when she hit something. On cross-examination, Couto–Pressman testified that she was not sure her foot got stuck in the gap between the ties. She could not release her foot and did not know what was holding it in, but she believed her foot was touching a railroad tie. Couto–Pressman argues that even if her testimony about the accident was inconsistent, her medical expert reported that she sustained a twist injury consistent with her foot being lodged in something.

It is true, as noted by Couto–Pressman, that a plaintiff who trips because of a hole in the ground or in the pavement may be able to recover damages. *See, e.g., Marks v. Tasman*, 527 Pa. 132, 589 A.2d 205 (1991) (denying summary judgment where a material fact was unresolved as to whether a defect in the sidewalk caused the claimant's injury); *Harris by Harris v. Hanberry*, 149 Pa.Cmwlth. 300, 613 A.2d 101 (1992) (finding that a hole on the defendant's property alleged to have caused

a fall presented a material factual question that precluded summary judgment). However, Couto–Pressman did not allege that a hidden danger or defect caused her fall.

Couto–Pressman offers no precedent for the proposition that a property owner creates a dangerous condition by the installation of a fixture that has spaces between its component parts. This would include any fixture with gaps, such as a gate, fence, stair rail or balcony with balusters. All are inherently dangerous under Couto–Pressman's theory because a person's arm or leg may slip between the spaces after a fall. This means, for example, that every invitee using stairs must be instructed to mind the gap in the railing because should she slip, the invitee's foot might slip between the gap in the railing and result in a physical injury.

Couto–Pressman was required to establish, first, that the gaps between the railroad ties in themselves presented a dangerous condition and, second, that the Richards *knew or should have known* of this danger. Couto–Pressman presented no evidence or explanation from the evidence she developed that either the Richards or the City knew or should have known of this danger. As the Pennsylvania Supreme Court has explained:

> For a danger to be "known," it must "not only be known to exist, but . . . also be recognized that it is dangerous and the probability and gravity of the threatened harm must be appreciated." . . . Although the question of whether a danger was known or obvious is usually a question of fact for the jury, the question may be decided by the court where reasonable minds could not differ as to the conclusion.

*Carrender v. Fitterer,* 503 Pa. 178, 185–86, 469 A.2d 120, 124 (1983) (quoting Restatement (Second) of Torts § 328B comments c and d (1965)). We agree with the trial court's determination that reasonable minds could not find that a gap between railroad ties used as a kind of curbing presents an inherent danger.

In her second issue, Couto–Pressman asserts that the trial court found her to be contributorily negligent, which was a question for the jury. She claims that the trial court presumed that she was negligent in slipping. The Richards and the City counter that the trial court never mentioned contributory negligence. We agree. Couto–Pressman has misconstrued the trial court's determination, which did not suggest that Couto–Pressman's negligence caused her injuries. Rather, the trial court observed only that the railroad ties did not cause her to fall, and she did not allege or prove otherwise.

■ In her third issue, Couto–Pressman argues that the trial court failed to consider the Richards' violation of local ordinances. The trial court noted that Couto–Pressman's expert evidence consisted of a surveyor's report, which confirmed that the railroad ties were located in the City's right-of-way. The Richards argue that this evidence did not prove that they violated the ordinance; the City joins in the Richards' argument.

Section 903.02 of the Streets, Utilities and Public Services Code (Code) of the City of Allentown states that "[n]o person shall put, place, maintain, erect or cause to be put, placed, maintained or erected any permanent obstruction in the right-of-way of any public thoroughfare." R.R. 81. A "permanent obstruction" is any type of structure that would "impede, obstruct or otherwise limit or prevent that area's use for the free flow of pedestrian and/or vehicular traffic." R.R. 80. Section 904.02 of the Code prohibits temporary obstructions in the right-of-way. Couto–Pressman cites these provisions but does not

relate them to the evidence. Her evidence did not show that the railroad ties prevented the use of the right-of-way.

Claimant also cites Section 907.01 of the Code. It requires property owners to construct sidewalks when there is new residential or non-residential construction; where there is an addition to non-residential structures; where there is resurfacing, repaving or other street reconstruction; or where the City Engineer deems it necessary. R.R. 89. However, Couto–Pressman provided no facts to show that any of these conditions applied to the Richards and, thus, obligated them to construct a sidewalk on the side of their property.

In sum, we reject Couto–Pressman's third assignment of error. It was not necessary for the trial court to have engaged in a discussion of the ordinances cited by Couto–Pressman. It was Couto–Pressman's burden to present evidence to show a violation, and she did not do so.

■ In her fourth issue, Couto–Pressman argues that the trial court rejected her other theories of negligence. Restatement (Second) of Torts § 368 (1965)[4] states, in relevant part, as follows:

[a] possessor of land who creates or permits to remain thereon an . . . artificial condition so near an existing highway that he realizes or should realize it involves an unreasonable risk to others accidentally brought into contact with it . . . is subject to liability. . . .

Couto–Pressman asserts that the railroad ties were an artificial condition that presented an unreasonable risk to persons using the existing highway, i.e., the street along the side of the Richards' property.

In support, Couto–Pressman points to *Schaut v. Borough of St. Marys*, 141 Pa.Super. 388, 14 A.2d 583 (1940). In that case, the plaintiff slipped on a paved sidewalk and fell into iron stakes that had been placed there by the property owner to discourage pedestrians from walking on his newly seeded grass. The iron stakes were approximately one foot high, topped by sharp flanges that formed a point. When the plaintiff fell, he landed on the iron stakes, which tore the wall of his abdomen and caused a ventral hernia. The jury awarded the plaintiff damages, and the landowner appealed.

The Superior Court explained that customary fixtures that involve "some slight element of danger" are not actionable. *Id.* at 585. However, the Superior Court held that the stakes in question were not the type ordinarily used to protect grass and could present a risk to those using the sidewalk. Accordingly, the Court held that the jury was justified in finding the defendants were negligent because the "probable danger of injury outweighed the useful purpose of the stakes." *Id.*

The Richards counter that *Schaut* is distinguishable. Pointed iron stakes within inches of a pedestrian sidewalk were inherently risky and were not an ordinary method of protecting young grass. By contrast, the railroad ties did not in themselves present a risk of harm and there was nothing uncommon about their use. A gap between railroad ties used as curbing bears no comparison to pointed iron

---

4. It provides, in full:

A possessor of land who creates or permits to remain thereon an excavation or other artificial condition so near an existing highway that he realizes or should realize that it involves an unreasonable risk to others accidentally brought into contact with such condition while traveling with reasonable care upon the highway, is subject to liability for physical harm thereby caused to persons who (a) are traveling on the highway, or (b) foreseeably deviate from it in the ordinary course of travel.

Restatement (Second) of Torts § 368 (1965).

stakes. At worse, it presents "some slight element of danger" and, under *Schaut*, is not actionable.

The Richards point to *Winkler v. Seven Springs Farm, Inc.*, 240 Pa.Super. 641, 359 A.2d 440 (1976), as the more pertinent precedent. In *Winkler*, the plaintiff, a guest at a resort, had difficulty opening a screen door. She pushed it several times and when the door finally opened, her momentum caused her to fall down the steps and break her ankle. The plaintiff contended the landowners were negligent in allowing the door to "become sticky" and in failing to provide a platform outside of the door. *Id.* at 442. The jury found in favor of plaintiff. On appeal, the Superior Court held that the plaintiff's evidence was inadequate to prove negligence.

The Superior Court explained that a landowner "is not an insurer of his business invitees, and plaintiff's evidence must establish some degree of negligence on defendant's part in order to recover." *Id.* "[T]he mere happening of an accident is no evidence of negligence and does not raise a presumption of negligence." *Id.* at 443. Because the plaintiff's evidence did not show that the landowner knew the door was sticking or should have discovered the problem, judgment was reversed.

We agree with the Richards that, as in *Winkler*, Couto–Pressman's evidence does not show that the Richards knew that a gap in the railroad tie curbing presented a dangerous condition. Nor did her evidence show that the Richards could have discovered the danger with a proper inspection.

■ Couto–Pressman advances another theory of negligence under Sections 364 and 366 of the Restatement (Second) of Torts (1965). Section 364 provides that a landowner is liable for harm caused by an artificial condition of land which creates a risk of harm.[5] Section 366 provides that one who takes possession of land is liable for fixtures already on it that are unreasonably dangerous, if the possessor knows or should have known of the dangerous condition.[6] The Richards respond that these provisions would apply only if one agrees with the premise that a gap between the railroad ties constitutes a dangerous condition, and it does not. We agree.

In her final issue, Couto–Pressman argues that the trial court erred because the Richards increased the risk of harm by giving her incomplete instructions on how to get to the backyard. Couto–Pressman complains that an ornamental structure

5. It provides, in full:

A possessor of land is subject to liability to others outside of the land for physical harm caused by a structure or other artificial condition on the land, which the possessor realizes or should realize will involve an unreasonable risk of such harm if (a) the possessor has created the condition, or (b) the condition is created by a third person with the possessor's consent or acquiescence while the land is in his possession, or (c) the condition is created by a third person without the possessor's consent or acquiescence, but reasonable care is not taken to make the condition safe after the possessor knows or should know of it.

Restatement (Second) of Torts § 364 (1965).

6. It provides, in full:

One who takes possession of land upon which there is an existing structure or other artificial condition unreasonably dangerous to persons or property outside of the land is subject to liability for physical harm caused to them by the condition after, but only after, (a) the possessor knows or should know of the condition, and (b) he knows or should know that it exists without the consent of those affected by it, and (c) he has failed, after a reasonable opportunity, to make it safe or otherwise to protect such persons against it.

Restatement (Second) of Torts § 366 (1965).

blocked a handicapped curb cut in the street at the rear of their property. In her deposition, Couto–Pressman acknowledged that this structure had no relevance to the path she took that day. She was not handicapped and did not need to use the curb cut. She also admitted that she had no desire or need to walk in the area of the wooden decoration. Nevertheless, Couto–Pressman argues that the wooden decoration, together with the adjacent grass and mulch, obstructed the sidewalk at the rear of the Richards' property. This misses the point. There was no sidewalk on the side of the Richards' property and, thus, nothing to block. Couto–Pressman was not walking on a sidewalk when the accident occurred; she was walking on the Richards' yard.

Couto–Pressman contends that the Richards should have prepared for their yard sale by putting up directional and warning signs. They put sale items in two locations, and this required customers to walk several hundred feet. The Richards should have provided specific instructions on how to get into the backyard. Regardless of whether the Richards put sufficient contemplation into their yard sale, Couto–Pressman has the burden to show they created an unreasonable risk of harm on the property. This she failed to do and, thus, we reject her final assertion of error.

For these reasons, we affirm the order of the trial court.

### ORDER

AND NOW, this 21st day of March, 2013, the orders of the Court of Common Pleas of Lehigh County in the above-captioned matter, dated March 7, 2012, granting summary judgment to Kenneth L. Richards and Virginia M. Richards and The City of Allentown, are hereby AFFIRMED.

DISSENTING OPINION BY Senior Judge COLINS.

I must respectfully dissent from the majority's conclusion regarding the granting of summary judgment as to the homeowners. The majority predicated its legal conclusion upon factual determinations which should have been within the province of the trier of fact, i.e., a judge or jury. Therefore, I would reverse the order of the trial court granting summary judgment in favor of the homeowners.