**Deborah Ann NARDELLA, Appellant**

v.

**SOUTHEASTERN PENNSYLVANIA TRANSIT AUTHORITY.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 15, 2011.
Decided Nov. 30, 2011.
Reconsideration Denied Jan. 26, 2012.

Deborah Ann Nardella, pro se.

Maureen L. McGinty, Philadelphia, for appellee.

BEFORE: McGINLEY, Judge, and COHN JUBELIRER, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge COHN JUBELIRER.

Deborah Ann Nardella appeals, pro se, from the Order of the Court of Common Pleas of Philadelphia (trial court) that granted the Motion for Summary Judgment (Motion) filed by the Southeastern Pennsylvania Transportation Authority (SEPTA)[1] on the basis that SEPTA enjoyed sovereign immunity because Ms. Nardella could not establish that the real estate exception to sovereign immunity, Section 8522(b)(4) of the Act commonly known as the Sovereign Immunity Act (Act), 42 Pa.C.S. § 8522(b)(4), applied in this matter. Ms. Nardella essentially argues that the trial court erred in granting summary judgment because: it improperly relied on the "on/of" test to determine whether the real estate exception applied here; SEPTA is not entitled to immunity because the dangerous condition derived, originated, or had as its source the Commonwealth realty, namely that SEPTA failed to properly maintain its platform by not applying melting agents to melt the ice that had accumulated on the platform; and Ms. Nardella is entitled to a "civil right to personal safety" or "general standard of care" that was not protected through the grant of summary judgment. (Ms. Nardella's Br. at 19.)

On or about November 4, 2009, Ms. Nardella filed a Complaint in Civil Action (Complaint) alleging, in relevant part, that she was injured on December 14, 2007, when she slipped and fell "upon ice and/or other underlying defective conditions on the platform" while attempting to board a train from Tacony Station's platform. (Compl.¶ 7.) Ms. Nardella averred that she became lodged between the track and the platform and sustained numerous injuries. (Compl.¶¶ 7, 10.) The Complaint alleged that SEPTA owned, managed, possessed, controlled, and was otherwise responsible for the maintenance of the platform, including the removal of ice and snow from the platform, and SEPTA was responsible for keeping the platform in good and safe condition so that the platform would not constitute a menace or danger to those lawfully using the platform. (Compl.¶¶ 4–5.) Ms. Nardella averred that the accident was the sole result of SEPTA's recklessness and negligence and that this negligence was the sole and proximate cause of her injuries. (Compl.¶¶ 8–9.) SEPTA filed an Answer with New Matter to the Complaint (Answer), in which it denied Complaint's factual averments and raised, *inter alia,* its entitlement to the defense of sovereign immunity under Section 8521 of the Act, 42 Pa.C.S. § 8521. (Answer ¶¶ 22, 25.)

The matter proceeded to discovery, during which SEPTA deposed Ms. Nardella. During her deposition, Ms. Nardella testified that there was a platform and a wooden step that was used to step onto the train. (Nardella Dep. at 12–13, R.R. at 29a.) She stated that when she attempted to board the train on December 14, 2007, she "put [her] right foot up [onto the train from the wooden step] and [her] left foot slid on the ice and went towards under the train." (Nardella Dep. at 13, R.R. at 29a.) Ms. Nardella explained that, after her foot slipped, she landed on her back on the platform. (Nardella Dep. at 16–18, R.R. at 30a–31a.) Lenard Malcom, a conductor on the SEPTA train Ms. Nardella attempted

---

1. We note that, although the caption refers to SEPTA as Southeastern Pennsylvania *Transit* Authority in accordance with the Notice of Appeal filed with this Court, SEPTA's correct name is Southeastern Pennsylvania *Transportation* Authority.

to board before falling, testified by deposition that he did not observe Ms. Nardella fall, but witnesses informed him that she slipped on the step, which he observed as being icy or frosty. (Malcom Dep. at 29–33, 38–39, R.R. at 77a–78a, 80a.)

Following Ms. Nardella's deposition, SEPTA filed the Motion, in which it conceded that it had sole responsibility for the Tacony Station and its platforms,[2] but asserted that, pursuant to Section 8522(b)(4) of the Act and *Jones v. Southeastern Pennsylvania Transportation Authority*, 565 Pa. 211, 772 A.2d 435 (2001), it was entitled to summary judgment because "[i]ce on a platform does not constitute a defective condition derived or originating from the real estate, and [Ms. Nardella's] claim therefore does not fall within any exception to sovereign immunity." (Motion ¶¶ 10, 12.) Ms. Nardella submitted a brief in opposition to the Motion, asserting that summary judgment was not proper where she alleged that the wooden platform was inherently defective because SEPTA failed to properly maintain the platform, resulting in the dangerous condition. (Ms. Nardella's Brief in Opposition to Summary Judgment at 4–5, R.R. at 65a–66a.) The trial court agreed with SEPTA that it was immune from suit and, therefore, granted summary judgment in SEPTA's favor on October 13, 2010. Ms. Nardella appealed to the Superior Court, which transferred the matter to this Court. Thereafter, the trial court issued an opinion explaining that it granted the Motion because it was clear and free from doubt that the alleged dangerous condition here, an ice accumulation on platform, did not derive, originate or have as its source the Commonwealth's realty itself. (Trial

Court Op. at 4.) Rather, the trial court held that this condition "derived from precipitation and near freezing temperatures." (Trial Court Op. at 4.) The trial court held that this matter was substantially similar to, *inter alia, Lingo v. Philadelphia Housing Authority*, 820 A.2d 859, 862 (Pa. Cmwlth.2003) (holding that debris on a stairway did not fall within the real estate exception as it did not derive, originate or have the Commonwealth's realty as its source) and *Kahres v. Henry*, 801 A.2d 650, 654–55 (Pa.Cmwlth.2002) (concluding that sovereign immunity was not waived where the plaintiff did not allege or present evidence that the dangerous condition, a snow mound that encroached on a portion of a roadway, had derived, originated, or had the Commonwealth's realty as the source of the condition).

 Sovereign immunity derives from Article I, Section 11 of the Pennsylvania Constitution, which provides that "[s]uits may be brought against the Commonwealth in such a manner, in such courts and in such cases as the Legislature may by law direct." Pa. Const. Art. I, § 11. Sections 8521 and 8522 of the Act set forth the following regarding sovereign immunity:

§ 8521. Sovereign immunity generally

(a) General rule.—Except as otherwise provided in this subchapter, no provision of this title shall constitute a waiver of sovereign immunity for the purpose of 1 Pa.C.S. § 2310 (relating to sovereign immunity reaffirmed; specific waiver) or otherwise.

. . . .

§ 8522. Exceptions to sovereign immunity

2. Ms. Nardella included in her Complaint allegations and a count of negligence against the National Railroad Passenger Corporation (AMTRAK) based on her belief that AMTRAK also bore responsibility for the Tacony Station and its platforms. (Compl.¶¶ 2, 4–8, 15–18.) AMTRAK was eventually dismissed as a party.

. . . .

(b) Acts which may impose liability.— The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by:

. . . .

(4) Commonwealth real estate, highways and sidewalks.—*A dangerous condition of Commonwealth agency real estate* and sidewalks, including Commonwealth-owned real property, leaseholds in the possession of a Commonwealth agency and Commonwealth real property leased by a Commonwealth agency to private persons, and highways under the jurisdiction of a Commonwealth agency, exception conditions described in paragraph (5) [ (related to potholes and other dangerous conditions of highways under the jurisdiction of a Commonwealth agency) ].

42 Pa.C.S. §§ 8521(a), 8522(b)(4) (emphasis added). SEPTA is considered a Commonwealth agency for the purposes of sovereign immunity. *Feingold v. Southeastern Pennsylvania Transportation Authority,* 512 Pa. 567, 579, 517 A.2d 1270, 1276 (1986). In interpreting the "real estate exception," as well as all exceptions to sovereign immunity, "we utilize a rule of strict interpretation based upon 'the legislature's intent ... in the [Act] ... to shield [the] government from Liability.' " *Lingo,* 820 A.2d at 862 (quoting *Jones,* 565 Pa. at 220, 772 A.2d at 440). In *Jones,* a case involving a suit against SEPTA alleging a dangerous condition of a train platform based on the presence of rock salt on

the platform on which the plaintiff slipped and fell, which resulted in bodily harm, the Supreme Court rejected the "on/of distinction" for the purposes of the real estate exception to sovereign immunity, stating "we now conclude that the 'on/of distinction' is problematic and of little or no use." *Jones,* 565 Pa. at 224, 772 A.2d at 443. Thus, now, in order for a party to assert a claim under this exception "for injuries caused by a substance or an object on Commonwealth real estate *[, the party] must allege that the dangerous condition 'derive[d], originat[ed] or ha[d] as its source the Commonwealth realty' itself.*" *Jones,* 565 Pa. at 225, 772 A.2d at 443 (quoting *Snyder v. Harmon,* 522 Pa. 424, 433, 562 A.2d 307, 311 & n. 5 (1989) (alterations in *Jones* )) (emphasis added) (first alteration added). Because the plaintiff in *Jones* did not make any "averments, which if proven, would establish that the salt derived or originated from or had as its source the train platform itself," the Supreme Court affirmed the grant of SEPTA's motion for summary judgment. *Jones,* 565 Pa. at 227, 772 A.2d at 444.

On appeal,[3] Ms. Nardella first argues that the trial court erred in granting summary judgment because it improperly relied upon the "on/of distinction" to determine whether the ice on the platform was a dangerous condition of SEPTA's real estate for the purpose of the Act. However, the trial court did not grant summary judgment based on the "on/of distinction" that was rejected by the Supreme Court in *Jones.* Rather, the trial court granted summary judgment because it concluded that the ice on which Ms. Nardella claimed

---

**3.** In reviewing a trial court's grant of summary judgment, "we may not disturb the order of the trial court absent of error of law or a clear abuse of discretion." *Lingo,* 820 A.2d at 860 n. 2. In making this determination, we "examine the record in the light most favor-able to the non-moving party and resolve all doubts as to the presence of a genuine issue of material fact against the moving party." *Id.* (quoting *Wilkinsburg School District v. Board of Property Assessment,* 797 A.2d 1034, 1035 n. 3 (Pa.Cmwlth.2002)).

to have slipped was not a dangerous condition of Commonwealth real estate because there was no allegation that the ice derived, originated from, or had as its source SEPTA's platform itself. (Trial Court Op. at 4.) Thus, this is not a basis on which the trial court's Order can be reversed.

■ Ms. Nardella next contends that, pursuant to *Jones,* her allegation that SEPTA's improper maintenance of the platform by allowing ice to accumulate thereon precludes the grant of summary judgment. For support, she cites the Supreme Court's statement in *Jones* that,

> assuming all other requirements of the statutory exception [of Section 8522(b)(4) ] are met, the Commonwealth may not raise the defense of sovereign immunity when a plaintiff alleges, for example, that a substance or object on Commonwealth realty was the result of a defect in the property or in its construction, *maintenance,* repair or design.

*Jones,* 565 Pa. at 225, 772 A.2d at 443–44 (emphasis added). Additionally, Ms. Nardella relies on, *inter alia, Kilgore v. City of Philadelphia,* 553 Pa. 22, 717 A.2d 514 (1998), *Grieff v. Reisinger,* 548 Pa. 13, 693 A.2d 195 (1997), and *Martin v. City of Philadelphia,* 696 A.2d 909 (Pa.Cmwlth. 1997), as further support for her contention that SEPTA's failure to properly maintain the platform falls within the real estate exception to sovereign immunity.

■ *Jones* does not stand for the proposition that any failure to maintain real estate falls within the real estate exception to sovereign immunity, but rather the fo-

cus must be on whether there is proof of a defect in the real property itself. For example, the Supreme Court concluded that its holding in *Jones* was consistent with its holding in *Finn v. City of Philadelphia,* 541 Pa. 596, 605, 664 A.2d 1342, 1346 (1995), a "dangerous condition of sidewalks" case under Section 8542(b)(7) of the Political Subdivision Tort Claims Act (Tort Claims Act), 42 Pa.C.S. § 8542(b)(7),[4] because both cases focused on the "dangerous condition of" language of their respective immunity provisions. *Jones,* 565 Pa. at 226, 772 A.2d at 444. The Supreme Court stated in *Finn,* which it reiterated in *Jones,* that "[w]hat is necessary, therefore, to pierce the Commonwealth agency's immunity is proof of a defect of the [real property] itself. Such proof might include an improperly designed sidewalk, an improperly constructed sidewalk, *or a badly maintained, deteriorating, crumbling sidewalk.*" *Jones,* 565 Pa. at 221–22, 772 A.2d at 441 (quoting *Finn,* 541 Pa. at 605, 664 A.2d at 1346) (emphasis added). Thus, the improper maintenance to which the Supreme Court referred resulted in a defect in the real property itself, i.e., the crumbling and deteriorating sidewalk. However, here, Ms. Nardella's allegations of improper maintenance are premised on SEPTA's failure to apply melting agents to address an accumulation of ice on the platform. These allegations of improper maintenance did not result from a defect in the real property itself, which remains necessary under *Jones* in order to fall within the real estate exception pursuant to Section 8522(b)(4) of the Act.

---

4. The Tort Claims Act applies to local governmental agencies and the exception found in Section 8542(b)(7) provides:

> (b) Acts which may impose liability.—The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:

. . . .

> (7) Sidewalks.—A dangerous condition of sidewalks within the rights-of-way of streets owned by the local agency. . . .

42 Pa.C.S. § 8542(b)(7).

This interpretation is consistent with the case law applying *Jones*, including *Raker v. Department of Corrections*, 844 A.2d 659 (Pa.Cmwlth.2004), *Lingo*, and *Kahres*. In *Raker*, an inmate brought a negligence action against the Department of Corrections arguing, *inter alia*, that the negligent maintenance of a dining hall floor created a dangerous condition of Commonwealth real estate that caused him to slip and fall. *Raker*, 844 A.2d at 660. The trial court granted summary judgment on the grounds that the water on the floor on which the inmate slipped was not a defect of the real estate itself. *Id.* at 661. This Court affirmed, noting that the dangerous condition must derive, originate, or have the real estate as its source in order to fall within the real estate exception, and substances such as ice, snow, or debris on the real estate do not qualify "unless those substances are there because of a design or construction defect." *Id.* at 662. In *Lingo*, the plaintiff alleged that the Philadelphia Housing Authority's failure to maintain and remove items from a stairwell resulted in the accumulation of dead leaves and debris which, exacerbated by rainfall, created a dangerous condition of Commonwealth real property on which she slipped, fell, and was injured. *Lingo*, 820 A.2d at 860 & n. 1. This Court affirmed the grant of summary judgment pursuant to Section 8522(b)(4), noting that there was no allegation that the debris or the rainfall had derived, originated, or had the Commonwealth's realty as its source. *Id.* at 862. Finally, in *Kahres*, the plaintiff alleged that the improper maintenance of a highway by the Department of Transportation (DOT) allowed the accumulation of

snow and ice to drift onto the road, creating a dangerous condition that resulted in a car accident in which the plaintiff was injured and her husband killed. *Kahres*, 801 A.2d at 652. The trial court granted summary judgment on several grounds, including that the plaintiff's claim did not fall within the real estate exception. *Id.* at 652. This Court affirmed on appeal, holding that the plaintiff "neither alleged nor presented any evidence that the snow mound encroaching the portion of the traveling lane ... derived or originated from or had as its source from [the road] itself." *Id.* at 654. Ms. Nardella's allegations of improper maintenance are akin to those raised, and rejected, in *Lingo*, *Kahres*, and *Raker*, and we must come to the same conclusion here that we did in those cases. Because Ms. Nardella neither alleged nor introduced any evidence that the ice on which she slipped was derived, originated from, or had as its source a design or construction defect in the platform itself, *Raker*, we conclude that the trial court did not err in granting summary judgment in SEPTA's favor.

Ms. Nardella relies on *Grieff*, *Kilgore*, and *Martin*; however, those cases are distinguishable because they involved the "care, custody, and control of real property" exception to governmental immunity under the Act commonly known as the Political Subdivision Tort Claims Act (Tort Claims Act), 42 Pa.C.S. § 8542(b)(3).[5] As the Supreme Court stated in *Jones*, as it distinguished its holding in that matter from *Grieff* and *Kilgore*,

the language the legislature chose for subjecting the Commonwealth to liabili-

---

5. The exception found in Section 8542(b)(3) provides:

 (b) Acts which may impose liability.—The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:

 . . . .

 (3) Real property.—The care, custody and control of real property in the possession of the local agency. . . .

42 Pa.C.S. § 8542(b)(3).

ty under [Section 8522(b)(4)]—a "dangerous condition of Commonwealth agency real estate"—varies markedly from the language it chose for subjecting a local agency to liability under [Section 8542(b)(3) of the Tort Claims Act]—the "care, custody or control of real property...." *See Kilgore,* 717 A.2d at 518 n. 6; *Grieff,* 693 A.2d at 197 n. 3. Because the words of the General Assembly used in the [Act] are one way and the words it used in the Tort Claims Act are another, we are of the view that the legislature did not intend that [Section] 8522(b)(4) and [Section] 8542(b)(3) be interpreted in lockstep.

*Jones,* 565 Pa. at 226, 772 A.2d at 444. Accordingly, those cases do not require a different result.

Ms. Nardella next asserts that the trial court erred by not enforcing SEPTA's responsibility to the public to provide a general standard of care in maintaining its facilities. She maintains that SEPTA should not be permitted to "shy away from serious injuries by claiming that [it is] immune from suit." (Ms. Nardella's Br. at 18.) Similarly, Ms. Nardella contends, citing *Hall v. Southeastern Pennsylvania Transportation Authority,* 141 Pa.Cmwlth. 591, 596 A.2d 1153 (1991),[6] that the trial court erred in granting summary judgment in SEPTA's favor because she "is entitled to a civil right of personal safety/general standard of care," which SEPTA violated by not providing appropriate warning signs, lighting, and by allowing ice to accumulate on the platform resulting in her fall. (Ms. Nardella's Br. at 19.)

Ms. Nardella's arguments are related to the merits of the underlying negligence claim she filed against SEPTA and, perhaps, to the public policy considerations associated with SEPTA's sovereign immunity. Although we sympathize with Ms. Nardella and her situation, the Pennsylvania Constitution grants Commonwealth agencies, including SEPTA, immunity from claims that, otherwise, would result in liability, except to the extent the legislature waives that immunity. The General Assembly has made a policy decision that limits a Commonwealth agency's liability for negligence to certain situations set forth in Section 8522(b) of the Act, none of which apply here. "[T]he enunciation of matters of public policy is fundamentally within the power of the legislature ... [and] [i]t is not for us to legislate." *Lurie v. Republican Alliance,* 412 Pa. 61, 65, 192 A.2d 367, 370 (1963) (citation omitted, first alteration added). "In our judicial system, the power of the courts to declare pronouncements of public policy is sharply restricted.... Rather, it is for the legislature to formulate the public policies of the Commonwealth." *Weaver v. Harpster,* 601 Pa. 488, 502, 975 A.2d 555, 563 (2009) (citation omitted). Accordingly, this Court may not revisit the General Assembly's policy decision.

Finally, *Hall* neither requires a different result, nor does it refer to any civil right of personal safety or general standard of care to which a plaintiff in a negligence action against a governmental agency is entitled. Rather, that case involved a woman who was struck in the head with a raw egg thrown through the window of a SEPTA trolley by a third party. *Hall,* 596 A.2d at 1154. The woman filed suit against SEPTA, alleging that her injuries were the result of SEPTA's negligence related, *inter alia,* to its operation of the trolley "with due regard, at the time, for the rights, safety and position of the plaintiff."

6. We assume that this is the *"Hall v. SEPTA "* Ms. Nardella refers to on page 19 of her brief without additional citation, as our research reveals that this is the only opinion with this caption that references the Act.

*Id.* Similar to Ms. Nardella, the plaintiff in *Hall* asserted that SEPTA, as a common carrier, should be "held to the highest degree of care to its passengers," but did not cite to any case which construed "the duty of care of a common carrier [that is] entitled to assert the defense of sovereign immunity." *Id.* at 1155. The trial court granted summary judgment based on sovereign immunity. *Id.* at 1154. On appeal, this Court affirmed the grant of summary judgment, stating that, "[e]ven assuming *arguendo,* that SEPTA is held to the highest duty of care and that duty was breached, [the plaintiff] nonetheless would not be able to satisfy the second requirement of Section 8522 of the [Act], that is, that the cause of action was within one of the exceptions contained in Section 8522(b)." *Id.* at 1155. Based on this statement, we conclude that, even if SEPTA had a duty to provide the public a general standard of care or that Ms. Nardella had a civil right to personal safety which SEPTA may have breached, the trial court properly granted summary judgment because Ms. Nardella was not able "to satisfy the second requirement of Section 8522 of the [Act], that is, that the cause of action was within one of the exceptions contained in Section 8522(b)." *Id.*

Accordingly, we must affirm the trial court's Order.

### ORDER

**NOW,** November 30, 2011, the Order of the Court of Common Pleas of Philadelphia County in the above-captioned matter is hereby **AFFIRMED.**