Doral Moon,                          :
                    Appellant       :
                                     :
                                     :
          v.                         :
                                     :
                                     :   No. 2011 C.D. 2014
Dauphin County                       :   Submitted: June 12, 2015


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE ROBERT SIMPSON, Judge
           HONORABLE ANNE E. COVEY, Judge


OPINION BY
JUDGE COVEY                              FILED: December 10, 2015


          Doral Moon (Moon) appeals from the Dauphin County Common Pleas
Court's (trial court) August 29, 2014 order granting Dauphin County's summary
judgment motion.  There are three issues for this Court's review:  (1) whether the trial
court erred by holding that Moon's claims fail under the Hills and Ridges Doctrine;
(2) whether the trial court abused its discretion by not addressing Moon's contention
that *res ipsa loquitur* applied to his design flaw claim; and (3) whether the trial court
abused its discretion by ruling that there was no actual or constructive notice of a
dangerous condition.  After review, we affirm.

          Moon resided at the Dauphin County Work Release Center (Center),
located at 919 Gibson Street, Harrisburg.  On August 22, 2008, Moon filed a
Complaint with the trial court alleging that he sustained injuries and damages on
February 22, 2008 when he fell on ice on the Center's fenced-in walkway and struck
a metal pole adjacent thereto.  On October 17, 2008, Moon filed a First Amended
Complaint (Amended Complaint), wherein, in Count I (Negligence Count) he
averred:

12. Dauphin County was negligent in:

a. restricting entry and exit from the Center to an area open to the elements, despite the likelihood of hazardous conditions during certain times of the year.

b. constructing the Center in a fashion that invited incidents such as the one that injured Moon . . . .

c. doing absolutely nothing to mitigate the obvious design flaw in the layout of the Center by either clearing, or warning of, said hazardous conditions.

13. Dauphin County's negligence is based primarily on the faulty design and configuration of [the Center].

14. Dauphin County's negligence is both the direct and proximate cause of Moon's fall because:

a. the proximate cause of Moon's injuries was the ice/snow accumulated at the on[l]y entrance/exit permitted for Center residents.

b. the direct cause of Moon's injuries was Moon's striking of the pole constructed adjacent to the exterior fence of the Center.

. . . .

16. Because [Dauphin County's] negligence is based on a design flaw (that of restricting ingress/egress to an exposed, potentially hazardous area[)], the Commonwealth does not enjoy sovereign immunity; [Moon] can therefore recover under the 'real estate' exception embodied in 42 Pa.[]C.S.[ §] 8522(b)[.]

Reproduced Record (R.R.) at 42a-43a.[1]

On November 21, 2008, Dauphin County filed an Answer and New Matter to Moon's Amended Complaint, *inter alia*, denying that a design flaw or any

---

[1] In Amended Complaint Count II, Moon also sought damages for "cruel punishment" based upon Dauphin County's deliberate indifference to the Center's condition and to his care.

other Center condition caused Moon's injuries, or that it "was aware of any icy condition that it did not properly address." R.R. at 58a. Dauphin County further pled, in relevant part, that it "did not have any notice of the alleged defective condition of the premises" (R.R. at 59a) and that Moon's "claims are barred by the Hills and Ridges Doctrine" (R.R. at 60a). On December 10, 2008, in his Answer to New Matter, and again in his December 11, 2008 Amended Answer to New Matter, Moon denied those affirmative defenses. The parties completed discovery.

On April 15, 2014, Dauphin County filed a Motion for Summary Judgment (Summary Judgment Motion). Moon answered the Summary Judgment Motion. The trial court heard argument on August 8, 2014. On August 29, 2014, the trial court granted Dauphin County's Summary Judgment Motion and dismissed Moon's Amended Complaint with prejudice, stating:

> Viewing the record in a light most favorable to [Moon], the facts establish that the slip and fall occurred while the wintery weather was ongoing. Consequently, [Dauphin County] cannot be shown to have actual or constructive notice of the existence of a dangerous condition; thus, **[Moon's] claims fail under the Hills and Ridges Doctrine**. **In addition,** this Court finds that [**Moon's**] **claims are barred by the real estate exception under 42 P.S. § 8522(b)(4) [sic]**. We find that the lack of additional walkways does not constitute 'a dangerous condition' of real estate; thus, [Moon's] claims are barred by sovereign immunity.

Trial Ct. Order at 1-2 (emphasis added).[2] Moon appealed to this Court.[3]

---

[2] In the trial court's Pa.R.A.P. 1925(a) Opinion, it stated: "In our Order dated August 29, 2014, we set forth a complete analysis as to why we found that [Dauphin County's] Motion for Summary Judgment should be granted. Thus, we incorporate herein our Order dated August 29, 2014." R.R. at 359a.

[3] Moon initially appealed to the Superior Court. By November 7, 2014 order, the Superior Court transferred the matter to this Court. *See* R.R. at 18a, 357a.

3

Moon first argues that the trial court erred by holding that his claims fail under the Hills and Ridges Doctrine. Specifically, Moon avers that his design flaw claim abrogates the immunity conveyed by the Hills and Ridges Doctrine. We disagree.

Section 8541 of the Judicial Code, commonly referred to as the Political Subdivision Tort Claims Act (Tort Claims Act),[4] 42 Pa.C.S. § 8541, makes local agencies[5] like Dauphin County immune from liability for damages caused to persons or property, <u>except</u> as otherwise provided in the Tort Claims Act.[6]

---

> An order of a trial court granting summary judgment may be disturbed by an appellate court only if the court committed an error of law; thus, our standard of review is *de novo,* and our scope of review is plenary. The entry of summary judgment is proper whenever no genuine issue of any material fact exists as to a necessary element of the cause of action. The moving party's right to summary judgment must be clear and free from doubt. We examine the record, which consists of all pleadings, as well as any depositions, answers to interrogatories, admissions, affidavits, and expert reports, in a light most favorable to the non-moving party, and we resolve all doubts as to the existence of a genuine issue of material fact against the moving party.

*LJL Transp., Inc. v. Pilot Air Freight Corp*., 962 A.2d 639, 647 (Pa. 2009) (citations omitted).

[4] 42 Pa.C.S. §§ 8541-8542.

[5] "Local agency" is defined in the Judicial Code as "[a] government unit other than the Commonwealth government." 42 Pa.C.S. § 8501. *See Herman v. Greene Cnty. Fair Bd., Cnty of Greene, et al.*, 535 A.2d 1251 (Pa. Cmwlth. 1988) (a county and its officials are afforded immunity pursuant to the Tort Claims Act).

[6] Commonwealth agencies, on the other hand, are afforded immunity protection under the act commonly referred to as the Pennsylvania Sovereign Immunity Act, 42 Pa.C.S. §§ 8521-8528. Moon and the trial court erroneously refer to the Sovereign Immunity Act.

Section 102 of the Judicial Code defines "Commonwealth agency" as "[a]ny executive agency or independent agency." 42 Pa.C.S. § 102. Executive agencies consist of "the departments, boards, commissions, authorities and other officers and agencies of the Commonwealth government[.]" *Id.*

"[T]he Supreme Court, in *Jones* [*v. Southeastern Pennsylvania Transportation Authority,* 772 A.2d 435 (Pa. 2001)], made clear that the legislature did not intend the real estate exception under the Sovereign Immunity Act and the real property exception under the Tort Claims Act to be

4

> Subsection 8542(a) [of the Tort Claims Act] provides **two conditions** a plaintiff must satisfy before determining whether the injury to person or property alleged falls within one of the exceptions to immunity for 'acts by a local agency or any of its employees,' contained in Subsection 8542(b) [of the Tort Claims Act]. *Id.* **First, a plaintiff must establish that 'damages would be recoverable under common law** or a statute creating a cause of action if the injury were caused by a person not having available a defense,' of governmental immunity or official immunity. 42 Pa.C.S. § 8542(a)(1). **Second, a plaintiff must establish that 'the injury was caused by the negligent acts of the local agency . . . with respect to one of the categories listed in subsection (b) . . .'** 42 Pa.C.S. § 8542(a)(2).

*Gale v. City of Phila.*, 86 A.3d 318, 320 (Pa. Cmwlth. 2014) (emphasis added). Based upon the record in this case, the trial court held that Moon could not satisfy the first condition of establishing a prima facie negligence action against Dauphin County.

During his deposition, Moon testified that he had been a Center resident since December 2007. He reflected that, on February 22, 2008, as he returned from his first job between 4:00 p.m. and 5:00 p.m., it was raining and the rain just "started getting a little . . . icy[,]" but he had no difficulty entering the Center to check in before leaving for his second job. R.R. at 391a ; *see also* R.R. at 395a, 405a. While at the Center, he recalled thinking that the weather must have worsened since he heard an announcement at approximately 6:40 p.m. that the Center's "grocery time"

---

interpreted in 'lockstep.' *Id.* [at 444]." *Repko v. Chichester Sch. Dist.*, 904 A.2d 1036, 1042 n.5 (Pa. Cmwlth. 2006). "The real property exception more broadly subjects a municipality to liability for harm resulting from the negligent 'care, custody or control' of its property. [42 Pa.C.S.] § 8542(b)(3)." *Grieff v. Reisinger*, 693 A.2d 195, 197 n.3 (Pa. 1997). However, in the interest of judicial economy, we will decide this matter as if the real estate exception to the Tort Claims Act had been applied.

and "utility time" and temporary job transportation were cancelled for the evening. R.R. at 395a.

Moon stated that he checked out to go to his 7:00 p.m. to 11:00 p.m. job at 6:45 p.m. and exited the Center by its only route – through the doors and onto a small walkway/ramp to the front gate. He recalled the only light being from the Center's interior. *See* R.R. at 399a-400a. Moon described that the ramp was wet, because he saw "a little shimmering of water," and parts of the walkway were getting icy. R.R. at 400a; *see also* R.R. at 398a, 400a. He recalled that he "patty step[ped]" and dragged his feet down the path. R.R. at 400a; *see also* R.R. at 404a, 407a, 410a. He explained that he "couldn't . . . really sense . . . ice," but "knew it was more than rain" because he could "hear . . . the little like pebble-type sound hitting the ground." R.R. at 410a; *see also* R.R. at 411a. He stated: "[I]t's like ice and stuff coming, you know, I know there's frost or stuff or ice coming down, too." R.R. at 411a. Moon articulated:

> A. . . . You know, I know it's -- the ground is frosted one way or another. So, . . . it was kind of hard, because I couldn't sustain the sense of rain or the sense of frost, because since there's still the – the condensation is still coming down . . . it's like kind of hard to tell.
>
> Q. So you're saying it's like kind of mixed, rain and sleet?
>
> A. Sort of. It's only, I guess, rain until it settles . . . on the ground.
>
> Q. Okay.
>
> A. Till it's like this, you know, like the frost point. So, like I said, I couldn't see. You know, I could barely see, you know, the sense of the path, understanding that, you know . . . if it's just ice or if it's rain.
>
> But . . . I had to take the chance, you know, no matter what. . . . I was put in the predicament that I had to leave the building.

R.R. at 412a. Moon's testimony further revealed:

> Q. . . . **Did you lose traction** at any point in time? Slip?
>
> A. **From the time I left the building until I got to the gate to leave, no, I didn't have no problem**.
>
> Q. At any point along that walk **did you see any accumulation of ice**?
>
> A. **Nawh**. . . . The only thing that I seen was just a little bit of salt right in front of the – the probation office doorway.[7] That's it.

R.R. at 401a (emphasis added); *see also* R.R. at 404a. Moon testified that since he did not feel crunching under his boots as he walked, he did not believe that the subject walkway was likewise salted. *See* R.R. at 405a, 410a.

Moon explained that he slipped and fell at the end of the walkway onto the post that holds the chain separating the walkway from the adjacent grass area. He declared that he proceeded to his job, arriving at approximately 8:15 p.m., but was only able to work 2½ hours due to pain. He described that as he walked back to the Center in the rain between 10:30 p.m. and 11:00 p.m., he observed that the building and the parking lot lights were on, and that there was salt on the walkway. R.R. at 424a-427a.

   a. <u>First Condition – The damages would be recoverable at common law if caused by someone without an immunity defense. 42 Pa.C.S. § 8542(a)(1).</u>

> [I]n order to prevail in a negligence action under common law, the plaintiff must establish that: (1) the defendant owed a duty of care to the plaintiff; (2) that duty was breached; (3) the breach resulted in the plaintiff's injury; and (4) the plaintiff suffered an actual loss or damages.

---

[7] The probation office has a separate entrance to the same Center building. The two walkways are separated by a gate. *See* R.R. at 401a, 403a, 477a.

*Brown v. Dep't of Transp.*, 11 A.3d 1054, 1056 (Pa. Cmwlth. 2011). "The standard of care a possessor of land owes to one who enters upon the land depends upon whether the person entering is a trespasser, licensee, or invitee." *Carrender v. Fitterer*, 469 A.2d 120, 123 (Pa. 1983). This Court has held that even though the inmates are not on the premises by choice, the duty of care owed by a county to work-release center inmates "is analogous to the standard of care applicable to invitees."[8] *Graf v. Cnty. of Northampton*, 654 A.2d 131, 134 (Pa. Cmwlth. 1995).

> Possessors of land owe a duty to invitees to protect them from foreseeable harm. *Carrender, . . .* 469 A.2d at 123 (citing Restatement (Second) of Torts §§ 341A, 343 and 343A (1965)). Regarding conditions on the land which are either known to or discoverable by the possessor, the possessor is subject to liability only if he
>
> > (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
> >
> > (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> >
> > (c) fails to exercise reasonable care to protect them against the danger.
>
> Restatement (Second) of Torts § 343.
>
> Section 343A of the Restatement expands upon the significance of dangers that are known or obvious to an invitee:
>
> > A possessor of land is not liable to his invitees for physical harm caused to them by any activity or

---

[8] Invitees are "person[s] who ha[ve] an express or implied invitation to enter or use another's premises, such as a business visitor or a member of the public to whom the premises are held open." *Black's Law Dictionary* 904 (9th ed. 2009); *see also Juszczyszyn v. Taiwo*, 113 A.3d 853 (Pa. Super. 2015).

condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

Restatement (Second) of Torts § 343A.[FN6] In adopting Section 343A, our Supreme Court explained the relationship between the doctrine of assumption of risk and the possessor's duty of care, or lack thereof:

It is precisely because the invitee assumes the risk of injury from obvious and avoidable dangers that the possessor owes the invitee no duty to take measures to alleviate those dangers. Thus, to say that the invitee assumed the risk of injury from a known and avoidable danger is simply another way of expressing the lack of any duty on the part of the possessor to protect the invitee against such dangers.

*Carrender, . . .* 469 A.2d at 125.

[FN]6. Our Supreme Court defined the terms 'known' and 'obvious' as follows:

A danger is deemed to be 'obvious' when 'both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising normal perception, intelligence, and judgment.' Restatement, supra, § 343A comment b. For a danger to be 'known,' it must 'not only be known to exist, but . . . also be recognized that it is dangerous and the probability and gravity of the threatened harm must be appreciated.' *Id.* Although the question of whether a danger was known or obvious is usually a question of fact for the jury, the question may be decided by the court where reasonable minds could not differ as to the conclusion. [*See*] Restatement, supra, § 328B comments c and d.

*Carrender, . . .* 469 A.2d at 123-[]24.

9

*Cochrane v. Kopko*, 975 A.2d 1203, 1206-07 (Pa. Cmwlth. 2009).

"The [Hills and Ridges D]octrine as defined and applied by the courts of Pennsylvania, is a refinement or clarification of the duty owed by a possessor of land and is applicable to a single type of dangerous condition, i.e., ice and snow." *Morin v. Traveler's Rest Motel, Inc.*, 704 A.2d 1085, 1087 (Pa. Super. 1997) (quoting *Wentz v. Pennswood Apartments,* 518 A.2d 314, 316 (Pa. Super. 1986)). It "protects an owner or occupier of land from liability for generally slippery conditions resulting from ice and snow where the owner has not permitted the ice and snow to unreasonably accumulate in ridges or elevations." *Morin*, 704 A.2d at 1087.

The [D]octrine of [H]ills and [R]idges provides

> that an owner or occupier of land **is not liable for general slippery conditions**, for to require that one's walks be always free of ice and snow would be to impose an impossible burden in view of the climatic conditions in this hemisphere. Snow and ice upon a pavement create merely transient danger, and the **only duty upon the property owner or tenant is to act within a reasonable time after notice to remove it** when it is in a dangerous condition.

*Harmotta v. Bender*, 601 A.2d 837, 841 (Pa. Super. 1992) (emphasis added) (quoting *Gilligan v. Villanova Univ.*, 584 A.2d 1005, 1007 (Pa. Super. 1991)). Thus, in order to recover for a fall on ice or snow, an injured party must prove the following factual elements:

> (1) that snow and ice had accumulated on the sidewalk in ridges or elevations of such size and character as to unreasonably obstruct travel and constitute a danger to pedestrians travelling thereon; (2) that the property owner had notice, either actual or constructive, of the existence of such a condition; and (3) that it was the dangerous accumulation of snow and ice which caused the plaintiff to fall.

*Mahanoy Area Sch. Dist. v. Budwash*, 604 A.2d 1156, 1158 (Pa. Cmwlth. 1992) (quoting *Rinaldi v. Levine*, 176 A.2d 623, 625-26 (Pa. 1962)).

Here, viewing the evidence in the light most favorable to Moon, as we must, the record establishes that when Moon entered the Center between 4:00 p.m. and 5:00 p.m., it was raining outside. Within five minutes after hearing that the Center's activities were cancelled for the night, Moon left the building, observed that the ramp/walkway was wet and, only because he sensed by the sound of the pellets hitting the ground that the rain was changing to ice, he watched and carefully placed his feet as he traveled. He did not lose traction and he did not observe any ice accumulated on the walkway. By the time he returned to the Center later that evening, the walkway had been salted.

Moon's testimony alone established that his February 22, 2008 fall occurred at the start of a weather event that Moon was aware created general slippery conditions in the area, and that Dauphin County did not permit ice to unreasonably accumulate in ridges or elevations that caused Moon to fall. Under the circumstances, Dauphin County is protected by the Hills and Ridges Doctrine and, therefore, is not liable to Moon. Accordingly, the trial court did not err by holding that Moon's claims fail under the Hills and Ridges Doctrine.

Because Moon failed to establish that his damages would be recoverable under common law, his claims fail to meet the first condition of Section 8542(a)(1) of the Tort Claims Act. Therefore, this Court generally would not need to analyze the issue of whether Moon satisfied the second condition that Dauphin County was liable under one of the listed immunity exceptions. *See* 42 Pa.C.S. § 8542(a)(1). However, in light of Moon's contention that his design flaw claim abrogates the immunity conveyed by the Hills and Ridges Doctrine, we will examine whether Dauphin County is immune from Moon's claims.

b. Second Condition - Injury was caused by the local agency's negligent acts with respect to one of the categories listed in Section 8542(b) of the Tort Claims Act. 42 Pa.C.S. § 8542(a)(2).

> [A] local agency will retain immunity unless **the claim alleged by the plaintiff also falls within one of the exceptions contained in Subsection 8542(b) [of the Tort Claims Act] . . . .** In accordance with the General Assembly's expressed intent to insulate local agencies from tort liabilities, the statutory language of the exceptions to governmental immunity contained in Subsection 8542(b) of the Tort Claims Act must be **construed narrowly**; immunity remains the rule.

*Gale*, 86 A.3d at 320 (emphasis added). In Section 8542(b)(3) of the Tort Claims Act, the General Assembly waived immunity and, thus, liability may be imposed for damages caused by a local agency's care, custody or control of real property in its possession.[9] However,

> [i]n *Kiley by Kiley v. City of Philadelphia, . . .* 645 A.2d 184 ([Pa.] 1994), our Supreme Court, citing its decisions in *Crowell v. Philadelphia, . . .* 613 A.2d 1178 ([Pa.] 1992), *Snyder v. Harmon, . . .* 562 A.2d 307 ([Pa.] 1989), and *Mascaro* [*v. Youth Study Center,* 523 A.2d 1118 (Pa. 1987)]*,* stated:

---

[9] Section 8542(b)(3) of the Tort Claims Act provides:

The care, custody or control of real property in the possession of the local agency . . . . As used in this paragraph, 'real property' shall not include:

(i) trees, traffic signs, lights and other traffic controls, street lights and street lighting systems;

(ii) facilities of steam, sewer, water, gas and electric systems owned by the local agency and located within rights-of-way;

(iii) streets; or

(iv) sidewalks.

42 Pa.C.S. § 8542(b)(3).

> We have consistently maintained our view that the focus of the negligent act involving a use of government owned or controlled land (including streets and sidewalks) *must be the **actual defect of the land itself*** and that the rule of immunity can be waived only in those cases where it is alleged that the artificial condition or defect of the land causes the injury.

> *Kiley,* . . . 645 A.2d at 187 (emphasis added).

*Bullard v. Lehigh-Northampton Airport Auth.*, 668 A.2d 223, 225 (Pa. Cmwlth. 1995) (bold emphasis added).

"[L]iability will not be imposed [under the real estate exception of the Tort Claims Act] for injuries sustained as a result of a local agency's failure to remove a foreign substance from real property, including ice and/or snow." *Snyder v. N. Allegheny Sch. Dist.*, 722 A.2d 239, 245 (Pa. Cmwlth. 1998). The local agency may only be liable under that exception if the ice or snow on the real property "is there because of a design or construction defect." *McRae v. Sch. Dist. of Phila.*, 660 A.2d 209, 210 (Pa. Cmwlth. 1995). "[T]he focus must be on whether there is proof of a defect in the real property itself." *Nardella v. Se. Pa. Transit Auth.*, 34 A.3d 300, 304 (Pa. Cmwlth. 2011). **The exception to the immunity rule does not apply where "the dangerous condition merely facilitates injury[.]"** *Shedrick v. William Penn Sch. Dist.*, 654 A.2d 163, 164-65 (Pa. Cmwlth. 1995) (emphasis added) (wherein the plaintiff failed to prove that her fall was due to rainwater on a terrazzo floor was the result of a defect of the real estate itself).

Moon contends that "[t]he improper construction here is, of course, the conscious decision to maintain a single exit." Moon Br. at 21. Specifically, that "[t]here was only one exit available for [] Moon that evening. He could not turn left or right; he had no alternative but to pass through that gate into the icy/slippery conditions. . . . He was forced into a dangerous situation." Moon Br. at 14-15. In

13

sum, "[t]hat lack of choice, in the conditions present on February 22, 2008 is the 'design flaw' in the . . . Center that abrogates [Dauphin County's] immunity." R.R. at 298a (Moon Reply to Summary Judgment Motion at 4). Moon avers that "the options available to Dauphin County were twofold: to either take steps to make the one exit provided safe to walk on (such as spreading melting material near the entrance), or to provide an alternate exit in extraordinary situations such as the present case." Moon Br. at 19-20.

> In *Lingo* [*v. Philadelphia Housing Authority*, 820 A.2d 859 (Pa. Cmwlth. 2003)], the plaintiff alleged that the Philadelphia Housing Authority's failure to maintain and remove items from a stairwell resulted in the accumulation of dead leaves and debris which, exacerbated by rainfall, created a dangerous condition of Commonwealth real property on which she slipped, fell, and was injured. [Id.] . . . at 860 & n. 1. This Court affirmed the grant of summary judgment pursuant to Section 8522(b)(4), noting that there was no allegation that the debris or the rainfall had derived, originated, or had the Commonwealth's realty as its source. *Id.* at 862. . . . [I]n *Kahres* [*v. Henry,* 801 A.2d 650 (Pa. Cmwlth. 2002)], the plaintiff alleged that the improper maintenance of a highway by the Department of Transportation (DOT) allowed the accumulation of snow and ice to drift onto the road, creating a dangerous condition that resulted in a car accident in which the plaintiff was injured and her husband killed. [*Id.*] at 652. The trial court granted summary judgment on several grounds, including that the plaintiff's claim did not fall within the real estate exception. *Id.* at 652. This Court affirmed on appeal, holding that the plaintiff 'neither alleged nor presented any evidence that the snow mound encroaching the portion of the traveling lane . . . derived or originated from or had as its source from [the road] itself.' *Id.* at 654.

*Nardella*, 34 A.3d at 305.[10]

---

[10] We acknowledge that the *Nardella* Court applied Section 8522(b)(4) of the Sovereign Immunity Act rather than Section 8542(b)(3) of the Tort Claims Act. However, we find that the Court's reasoning is instructive in the instant case.

In *Bullard*, an airline employee sought damages for injuries she sustained when she slipped and fell on a patch of ice on the airport tarmac. The employee's claim was that the Authority failed to design adequate operating procedures, rather than the tarmac's design caused the ice formation. In affirming the trial court's order granting summary judgment in the Authority's favor, this Court held:

> [C]onstrained by the . . . dictate that exceptions to governmental immunity must be strictly construed, we reject Bullard's argument that in the context of the . . . Tort Claims Act, the word 'design' refers to anything other than the **design of a particular structure**, such as a sidewalk, a stairway, or an airport tarmac. In the instant matter, Bullard does not allege that the design of the tarmac itself caused the formation of the patch of ice on which she slipped. **Because the dangerous condition was on, rather than of the tarmac, the trial court did not err in granting summary judgment to the Authority**.

*Id.* at 226-27 (emphasis added). Thus, in this case, the design flaw must be of the walkway and not the failure to have an alternate route.

Because the law requires proof of a defect **of the walkway** on which Moon fell, his claim that the Center's single exit constituted a dangerous condition of the real estate is without merit. Moon testified that his fall was due to the slippery condition **on the walkway**, which he admits was not itself defective nor caused the icy condition. Even in his brief, Moon repeatedly stated the weather caused his fall. He admitted that "[t]here were no intervening causes . . . **save for the weather**," Moon Br. at 25 (emphasis added), and that "**ice [was] the probable/likely cause**," Moon Br. at 27 (emphasis added). Moon's allegation that the dangerous condition resulted from Dauphin County's failure to spread melting agents is similarly meritless since failure to do so is not a defect in the real property. *See Nardella*. Finally, considering the quickly-changing, pervasive weather conditions Moon described at

15

the time of his fall, even if there was an alternate exit from the Center, it may not have afforded him a safer exit, particularly if all walkways led to the "single gate" leading off the property where his injury purportedly occurred. Moon Br. at 25.

Because Moon failed to establish that his injury was caused by Dauphin County's negligent acts under Section 8542(b)(3) of the Tort Claims Act, his claims fail to meet the second condition of Section 8542(a)(1) of the Tort Claims Act. Accordingly, the trial court did not err by ruling that Moon's design flaw claim does not abrogate the immunity conveyed by the Hills and Ridges Doctrine.

Moon also argues that the trial court abused its discretion by ignoring Moon's contention that *res ipsa loquitur* applied to his design flaw claim in lieu of expert testimony. Specifically, Moon contends: "The improper construction here is, of course, the conscious decision to maintain a single exit. The equation in this matter is neither difficult, nor does it lend itself to expert testimony." Moon Br. at 21. We disagree.

> The Pennsylvania Supreme Court explained:
>
> *Res ipsa loquitur* allows juries to infer negligence from the circumstances surrounding the injury. *Res ipsa loquitur,* meaning literally 'the thing speaks for itself,' is 'a shorthand expression for circumstantial proof of negligence-a rule of evidence.' *Gilbert v. Korvette, Inc., . . . 327 A.2d 94, 99 ([Pa.] 1974).* It is a rule that provides that a plaintiff may satisfy his burden of producing evidence of a defendant's negligence by proving that he has been injured by a casualty of a sort that normally would not have occurred in the absence of the defendant's negligence. WILLIAM L. PROSSER, LAW OF TORTS §§ 39, 40 (4th ed. 1971) (calling *res ipsa loquitur* a 'simple matter of circumstantial evidence'). As noted, the Restatement (Second) of Torts § 328D formulates the evidentiary theory of *res ipsa loquitur* as follows:
>
>> (1) It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when

16

(a) the event is of a kind which ordinarily does not occur in the absence of negligence;

(b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and

(c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.

(2) It is the function of the court to determine whether the inference may reasonably be drawn by the jury, or whether it must necessarily be drawn.

(3) It is the function of the jury to determine whether the inference is to be drawn in any case where different conclusions may reasonably be reached.

REST. (SECOND) TORTS § 328D. *See also Gilbert, . . .* (adopting *res ipsa loquitur* as defined in the Restatement (Second) of Torts § 328D). By adopting § 328D, we rejected earlier doctrines that had combined substantive and procedural concerns with the evidentiary question of the propriety of inferring negligence from particular circumstances. *Jones v. Harrisburg Polyclinic Hosp*[.]*, . . .* 437 A.2d 1134, 1137 ([Pa.] 1981); *Gilbert,* 327 A.2d at 98.

*Quinby v. Plumsteadville Family Practice, Inc.*, 907 A.2d 1061, 1071 (Pa. 2006) (footnotes omitted). Despite that Pennsylvania courts have referred to *res ipsa loquitur* as the means by which negligence may be inferred, more specifically, it aids a plaintiff in satisfying only the **breach of duty** element of a negligence claim, not the establishment of a duty or the other required elements. Our Supreme Court in *Quinby* clarified:

Upon close analysis, it is apparent that *res ipsa loquitur* provides no assistance to a plaintiff's obligation to demonstrate a defendant's duty, that a breach of that duty was a substantial factor in causing plaintiff harm, or that such harm resulted in actual damages. However, ***res ipsa loquitur* does aid a plaintiff in proving a breach of duty**.

17

While *res ipsa loquitur* is **useful in this limited regard**, case law universally refers to *res ipsa loquitur* as raising an inference of 'negligence' rather than an inference of 'breach of duty.' Accordingly, we will abide by this typical nomenclature and refer to *res ipsa loquitur* as 'raising an inference of negligence.'

*Id.* at 1071 n.15 (emphasis added).

In light of the trial court's determination in the instant case that Dauphin County did not owe Moon any duty in the first place, the trial court was not required to reach a conclusion about whether there was a breach of duty. Rather, whether *res ipsa loquitur* applied to Moon's design flaw claim in lieu of expert testimony was an issue the trial court was not required to address and properly disregarded.

Lastly, Moon argues that the trial court abused its discretion by ruling that there was no actual or constructive notice of a dangerous condition when a mere observation of the weather provided Dauphin County such notice. Specifically, Moon avers that *res ipsa loquitur* also eliminated the requirement that he prove what weather conditions existed at the time of his accident. We disagree.

Pennsylvania courts have recognized that it would be impossible for possessors of land to immediately detect and eliminate all transient dangers created by snow and ice when "the climatic conditions in this hemisphere" change so quickly. *Harmotta*, 601 A.2d at 841 (quoting *Gilligan*, 584 A.2d at 1007). Thus, their duty to invitees is to remedy such situations "within a reasonable time after notice." *Id.* We also find instructive the Pennsylvania Superior Court's conclusion that

> when a patron suffers an injury in a store from a transitory danger, *res ipsa loquit*[*u*]*r* does not apply.[11] The caselaw reveals two discrete types of situations involving such transitory dangers: (1) those in which a patron slipped on debris; and (2) those in which a patron was struck by falling

---

[11] Like Moon in this case, a store patron is an invitee. *See Rodriguez v. Kravco Simon Co.*, 111 A.3d 1191 (Pa. Super. 2015).

18

goods that had been stacked properly for display. In sum, **res ipsa loquit[u]r does not apply to prove the negligence of shopkeepers in slip and fall debris cases** and cases in which properly stacked items fall on patrons, **because shopkeepers cannot be charged with notice of transitory dangers that can materialize a split second before an injury occurs**.

*Neve v. Insalaco's*, 771 A.2d 786, 789 (Pa. Super. 2001) (citations omitted; emphasis added).

According to Moon's testimony, it was raining when he entered the Center between 4:00 and 5:00 on February 22, 2008. It was still raining when he exited the Center at 6:45 p.m., but he could hear the beginning stages of frozen precipitation hitting the ground. When he returned to the Center, the walkway had been salted. The only record evidence Moon proffered that the trial court could have deemed proof that Dauphin County had actual or constructive notice of slippery conditions at 6:45 p.m. was his testimony that a mere five minutes earlier, the Center's evening activities were cancelled. Even accepting Moon's testimony as true, there is nothing in the record to establish that the cancellation of the activities was due to weather conditions, or that the time it took Dauphin County to salt the walkway after he left was unreasonable under the circumstances. Rather, Moon supplied no evidence that Dauphin County failed to detect and eliminate a danger within a reasonable time. Therefore, we hold that the trial court did not abuse its discretion by ruling that Dauphin County had no actual or constructive notice of a dangerous condition.

Summary judgment is appropriate

**if, after the completion of discovery relevant to the motion, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action** . . . . A party seeking to avoid summary judgment must show by specific facts in

19

> their depositions, answers to interrogatories, admissions, or affidavits that there is a genuine issue for trial.

*O'Rourke v. Dep't of Corr.*, 730 A.2d 1039, 1041 (Pa. Cmwlth. 1999) (emphasis added); *see also* Pa.R.C.P. No. 1035.2. Moon's failure to produce evidence of facts essential to prove every element of his case does not create outstanding issues of material fact requiring a trial. Viewing the evidence in a light most favorable to Moon, there are no outstanding issues of material fact and Dauphin County is entitled to judgment in its favor as a matter of law. Under the circumstances, the trial court properly granted summary judgment in Dauphin County's favor under the Tort Claims Act.

Based on the foregoing, the trial court's order is affirmed.

_____
ANNE E. COVEY, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Doral Moon,                          :
                Appellant     :
                                    :
          v.                           :
                                    :
                                    :   No. 2011 C.D. 2014
Dauphin County                      :

## O R D E R

AND NOW, this 10th day of December, 2015, the Dauphin County Common Pleas Court's August 29, 2014 order is affirmed.


_____
ANNE E. COVEY, Judge